[No. S087346. Mar. 7, 2002.]

WILLIAM HAMILTON et al., Plaintiffs and Respondents, v.
MARYLAND CASUALTY COMPANY, Defendant and Appellant.

## COUNSEL

Low, Ball & Lynch, Jonathan Margolis, Thomas Mulvihill and Christopher E. Arras for Defendant and Appellant.

Horvitz & Levy, Peter Abrahams and L. Rachel Helyar for American International Companies, State Farm General Insurance Company, Truck Insurance Exchange and Mercury General Insurance Company as Amici Curiae on behalf of Defendant and Appellant.

Neumeyer & Boyd, Carol Boyd and Katherine A. Tatikian for AXA Global Risks (UK) Ltd. and Sirius International Insurance Corporation as Amici Curiae on behalf of Defendant and Appellant.

Sonnenschein Nath & Rosenthal, Paul E. B. Glad, Michael A. Barnes and Sonia Renee Martin for National Association of Independent Insurers, American Insurance Association, Fireman's Fund Insurance Company, International Insurance Company and Allstate Insurance Company as Amici Curiae on behalf of Defendant and Appellant.

Altshuler, Berzon, Nussbaum, Berzon & Rubin, Altshuler, Berzon, Nussbaum, Rubin & Demain, Michael Rubin, Michael E. Wall; McGuinn, Hillsman & Palefsky and Cliff Palefsky for Plaintiffs and Respondents.

## OPINION

**WERDEGAR, J.**—A liability insurer agrees to defend its insured against a personal injury lawsuit. After the insurer refuses a settlement demand within

the policy limits, the claimant and the insured, without the insurer's participation, agree on a settlement. Under the settlement agreement, a stipulated judgment in excess of the policy limits is entered, the claimant agrees not to execute the judgment against the insured, and the insured assigns to the claimant the insured's cause of action for breach of the insurer's duty to accept a reasonable settlement demand. The trial court approves the settlement as made in good faith pursuant to Code of Civil Procedure section 877.6.

In a subsequent action by the claimant, as the insured's assignee, against the insurer for breach of contract, is the amount of the stipulated judgment presumptively binding on the insurer as to the damages suffered by the insured as a result of the alleged contract breach? We conclude it is not; a defending insurer cannot be bound to a settlement to which it has not agreed and in which it has not participated, even where the settlement has been approved under Code of Civil Procedure section 877.6. In this circumstance, we further conclude, the claimant may not maintain an action for breach of the duty to settle because, in light of the settlement before trial and the covenant not to execute against the insured, the stipulated judgment is insufficient to prove that the insured suffered any damages from the insurer's breach of its settlement duty. We therefore affirm the judgment of the Court of Appeal, which ordered judgment entered for the defendant insurer.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Victoria Lee Parker and VLP Enterprises, Inc. (collectively VLP), owned and operated a San Diego franchise of Great Expectations Creative Management, Inc. (Great Expectations), a dating service. Maryland Casualty Company (Maryland) issued to VLP two successive commercial insurance policies, each with a $1 million policy limit.

In March 1990, William Hamilton, Paula Arnett, Susan Choate, Thomas Fort, Yvonne Kaut and others (claimants or plaintiffs), clients of various Great Expectations franchises, filed a complaint in Contra Costa County Superior Court, naming as defendants Great Expectations, each of its franchises, and the owners of each franchise. Claimants alleged the defendants had invaded the common law, constitutional, and statutory privacy rights of their clients and prospective clients by secretly recording, amplifying and broadcasting their confidential conversations. The complaint stated a proposed class made up of all persons who had been interviewed at any Great

---

[1] Our recital of the facts and trial court proceedings is taken, with minor changes, from the opinion of the Court of Appeal. Neither party sought rehearing in that court on the basis of a misstatement of the facts.

Expectations franchise. The complaint sought injunctive relief, statutory damages of the greater of $3,000 per incident or three times each class member's actual damages, and punitive damages.

VLP tendered the defense of the invasion of privacy claims against it to Maryland, which accepted, retaining an attorney to represent VLP. In June 1991, after overruling several demurrers to the complaint, the superior court appointed a special master for discovery and settlement matters. The master stayed all discovery and motions.

In June 1993, claimants demanded $1 million to settle with VLP. Maryland refused to pay the demand, countering with an offer to settle for $150,000. After these negotiations produced no settlement, VLP, without Maryland's participation, entered into a September 1993 settlement agreement with claimants as part of a global settlement between claimants and all the defendants. Under the terms of the global settlement, the defendants agreed to discontinue any further electronic eavesdropping on prospective clients. The Great Expectations franchisor agreed to provide, "by and through" its franchises, discount coupons to class members. Some defendants and insurers, *not* including VLP or Maryland, also contributed cash to an initial settlement fund of over $2 million. VLP further agreed to have a stipulated judgment entered against it in the amount of $3 million, and to assign to claimants any breach of contract claim it might have against Maryland, in return for which claimants agreed not to execute the judgment against VLP. Maryland neither approved nor opposed the settlement.

The special master recommended to the superior court that it approve the settlement, reporting his belief that it reasonably reflected claimants' potential success and the defendants' potential liability, was in the best interests of the class, and had been reached through arm's length negotiation. The superior court thereafter certified a plaintiffs' class, for purposes of settlement only, comprised of all individuals who had participated in a preliminary membership interview at one of the franchises. It confirmed the settlement as a good faith settlement, pursuant to Code of Civil Procedure section 877.6, declaring it to be "fair, reasonable, non-collusive and in good faith," and entered judgment in favor of claimants and against VLP.

In December 1994, claimants, as VLP's assignees, instituted the present action against Maryland, seeking damages for breach of the insurance contract on the theory that VLP was entitled to contractual damages from Maryland for Maryland's failure to accept claimants' settlement offers.

Maryland moved for summary judgment, arguing that because it at all times was defending the action brought by claimants against its insured, its

insured's liability could not be fixed by agreement of the parties in the underlying case, but had to be determined by trial. Absent either an actual trial or the insurer's refusal to defend, a stipulated judgment, especially one coupled with a covenant not to enforce, could not be binding on the insurer. The superior court rejected Maryland's arguments and denied its motion for summary judgment.

Claimants then filed a motion for summary judgment against Maryland, arguing that the insurer had breached its contractual duties by failing to accept their offer to settle their claims against VLP for $1 million and that the $3 million stipulated judgment was presumptive evidence, which Maryland had done nothing to rebut, of VLP's damages from the breach. The trial court agreed there was no factual dispute as to Maryland's breach of the covenant of good faith and fair dealing. Without discussing damages or the presumptive force of the stipulated judgment, the court entered judgment in favor of claimants for $3 million, plus prejudgment interest. Maryland appealed from the judgment, including from the trial court's denial of Maryland's own summary judgment motion.

The Court of Appeal reversed. An action for breach of the settlement duty cannot be brought against a defending insurer, the court held, until a judgment *after trial* has been entered against the insured. Only if the insurer has denied coverage or refused to defend may the insured recover the amount of a settlement made without the insurer's participation. The action here was "prematurely filed," according to the appellate court, in that "it cannot be determined if the failure to settle will cause actual injury to the insured until the defense has been completed and actual damage to the insured has been ascertained." The court concluded judgment should have been entered for Maryland rather than for claimants, and so ordered.

We granted review on claimants' petition.

### DISCUSSION

██ From the covenant of good faith and fair dealing implied by law in all contracts, and from the liability insurer's duty to defend and indemnify covered claims, California courts have derived an implied duty on the part of the insurer to accept reasonable settlement demands on such claims within the policy limits. (*Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 401 [97 Cal.Rptr.2d 151, 2 P.3d 1].) "[A]n insurer is required to act in good faith in dealing with its insured. Thus, in deciding whether or not to settle a claim, the insurer must take into account the interests of the insured, and when there is a great risk of recovery beyond the

policy limits, a good faith consideration of the insured's interests may require the insurer to settle the claim within the policy limits. An unreasonable refusal to settle may subject the insurer to liability for the entire amount of the judgment rendered against the insured, including any portion in excess of the policy limits. (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658-661 [328 P.2d 198, 68 A.L.R.2d 883].)" (*Safeco Ins. Co. v. Superior Court* (1999) 71 Cal.App.4th 782, 787-788 [84 Cal.Rptr.2d 43] (*Safeco*).) Though an action for the insurer's breach of the covenant of good faith and fair dealing sounds in both contract and tort (*Johansen v. California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 18 [123 Cal.Rptr. 288, 538 P.2d 744]), we are concerned here only with liability for breach of contract, for that is the only cause of action VLP assigned to plaintiffs.

■ An insurer that breaches its duty of reasonable settlement is liable for all the insured's damages proximately caused by the breach, regardless of policy limits. (*PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 315 [84 Cal.Rptr.2d 455, 975 P.2d 652] (*PPG Industries*); *Comunale v. Traders & General Ins. Co., supra,* 50 Cal.2d at p. 661.) Where the underlying action has proceeded to trial and a judgment in excess of the policy limits has been entered against the insured, the insurer is ordinarily liable to its insured for the entire amount of that judgment (*Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489, 502 [106 Cal.Rptr.2d 535, 22 P.3d 313]; *Kransco v. American Empire Surplus Lines Ins. Co., supra,* 23 Cal.4th at p. 401), excluding any punitive damages awarded (*PPG Industries, supra,* at p. 313). The insured's action for breach of the contractual duty to settle may be assigned to the claimant, regardless of whether assignments are permitted by the policy. (*Comunale v. Traders & General Ins. Co., supra,* at pp. 661-662.) Such an assignment may be made before trial, but the assignment does not become operative, and the claimant's action against the insurer does not mature, until a judgment in excess of the policy limits has been entered against the insured. (*Safeco, supra,* 71 Cal.App.4th at p. 788; *Critz v. Farmers Ins. Group* (1964) 230 Cal.App.2d 788, 799-800 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142], disapproved on other grounds in *Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 430 [58 Cal.Rptr. 13, 426 P.2d 173].)

■ In this case, the underlying action did not proceed to trial. It was terminated by settlement, resulting in a *stipulated* judgment coupled with a covenant not to execute against the insured. The question is whether such a stipulated judgment may be treated as a presumptive measure of the damages the policyholder has suffered as a result of the insurer's breach of contract.

Plaintiffs maintain that a stipulated judgment, despite the covenant not to execute, creates a rebuttable presumption of the insured's damages, at least

where it has been confirmed as reached in good faith pursuant to Code of Civil Procedure section 877.6. We disagree. As demonstrated below, where the insurer has accepted defense of the action, no trial has been held to determine the insured's liability, and a covenant not to execute excuses the insured from bearing any actual liability from the stipulated judgment, the entry of a stipulated judgment is insufficient to show, even rebuttably, that the insured has been injured to *any* extent by the failure to settle, much less in the amount of the stipulated judgment. In these circumstances, the judgment provides no reliable basis to establish damages resulting from a refusal to settle, an essential element of plaintiffs' cause of action. (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830 [69 Cal.Rptr. 321, 442 P.2d 377].)

A line of appellate decisions, leading to the decision below in this case, has found that settlements reached without the consent or participation of the defending insurer, and incorporating a covenant not to execute or similar device, are entitled to no weight in a later action against the insurer for failure to settle.

In *Doser v. Middlesex Mutual Ins. Co.* (1980) 101 Cal.App.3d 883 [162 Cal.Rptr. 115] (*Doser*), the liability insurer refused the wrongful death claimants' demand for settlement at the policy limits of $100,000. The claimants and the insured then "compromised" the suit, which had sought $1 million in damages, for $980,000, the claimants taking an assignment of the insured's claim against the insurer " 'in full and final satisfaction' " of the agreed payment. (*Id.* at p. 888.) The claimants, as the insured's assignees, then filed a suit for bad faith breach of contract against the insurer. (*Id.* at p. 889.)

The Court of Appeal held that judgment was properly entered for the defendant insurer, despite a jury verdict finding breach, because "[n]o legal liability was ever imposed as a result" of the breach. (*Doser, supra,* 101 Cal.App.3d at p. 891.) "In the instant case, the breach of duty to settle within policy limits presented only the possibility that a judgment might be rendered in excess of policy limits." (*Id.* at pp. 891-892.) "[H]ad the underlying wrongful death case been prosecuted to judgment, and had that judgment been in excess of the $100,000 policy limit, . . . a cause of action in the [insured] for Middlesex's alleged bad faith refusal to settle would have arisen, and that mature cause of action could have been assigned to the [claimants]." (*Id.* at p. 892.) At the time the settlement and assignment were actually made, however, it was possible Middlesex would successfully defend the underlying litigation, resulting in a defense judgment or a judgment for the claimants lower than the policy-limits settlement offer. As it

stood, then, the assignment and suit were based on a " 'mere possibility' " that damage would result from the breach of contract. (*Ibid.*, quoting *Walker v. Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513, 517 [6 Cal.Rptr. 924].)

The court in *Smith v. State Farm Mut. Auto. Ins. Co.* (1992) 5 Cal.App.4th 1104 [7 Cal.Rptr.2d 131] (*Smith*) followed *Doser* on somewhat different facts. Of two liability insurers potentially on the risk, one offered the insured a defense, while the other, State Farm, declined to participate in the defense. The claimants and the insured settled the underlying case for $500,000, embodied in a stipulated judgment, the insured giving the claimants an assignment of all claims against State Farm in exchange for a covenant not to execute the judgment against the insured. (*Smith, supra,* at p. 1108.) The appellate court saw "no distinction between a stipulated judgment with covenant not to execute and the device employed in [*Doser*], *supra,* 101 Cal.App.3d 883." (*Id.* at p. 1114.) In the action for failure to defend, the stipulated $500,000 figure bore no weight in the determination of damages. "Moreover, appellants have not stated a cause of action for recovering damages above policy limits of State Farm's insurance policy; the stipulated judgment with covenant not to execute does not constitute an excess judgment within the meaning of *Comunale* v. *Traders & General Ins. Co.*[, *supra,*] 50 Cal.2d 654 . . . ." (*Smith, supra,* at p. 1116, fn. 5.)

Most recently, in *Safeco, supra,* 71 Cal.App.4th 782, one of the defending liability insurers having refused a settlement demand, the claimants and the insureds agreed to a stipulated judgment in the amount of $645,000—$145,000 to be paid by a settling insurer and the remainder by the insureds. The claimants, however, agreed not to execute on the $500,000 remainder against the insureds, in exchange for the insureds' assignment of their rights against the nonsettling insurer. (*Id.* at pp. 785-786.)

The *Safeco* court, relying on *Smith* and *Doser* among other decisions, held that "until a litigated excess judgment is obtained, Safeco's refusal to settle is not actionable." (*Safeco, supra,* 71 Cal.App.4th at p. 789.) "If the insurer declines to settle and decides to go to trial and then obtains a judgment below the settlement offer or obtains a complete defense verdict, then the insured would have no cause to complain, and the insurer would have no liability. Until judgment is actually entered, the mere possibility or probability of an excess judgment does not render the refusal to settle actionable." (*Id.* at p. 788.)

The instant Court of Appeal, relying on *Safeco* and its predecessors, held that plaintiffs' action here was premature, in that "[u]ntil a judgment in excess of Maryland's policy has been entered against VLP, or VLP otherwise has suffered some actual injury as a result of the alleged breach of the

covenant of good faith and fair dealing," the existence of actual damage to the insured cannot be determined.

Plaintiffs do not argue that *Doser, supra,* 101 Cal.App.3d 883, *Smith, supra,* 5 Cal.App.4th 1104, and *Safeco, supra,* 71 Cal.App.4th 782, were wrongly decided on their facts, but contend they are distinguishable because in none of those cases had the trial court in the underlying case determined under Code of Civil Procedure section 877.6 (hereafter section 877.6) that the settlement was made in good faith. Plaintiffs cite *Roman v. Unigard Ins. Group* (1994) 26 Cal.App.4th 177, 184 [31 Cal.Rptr.2d 501] (*Roman*), in which the court held that a stipulated judgment, coupled with a covenant not to execute but approved under section 877.6, "satisfies the condition of a judgment or settlement of a claim needed before a valid assignment" of a bad faith action may be made. The *Roman* court distinguished *Smith* as involving an apparently collusive settlement, a problem assertedly avoided through approval under section 877.6. (*Roman, supra,* at p. 184; see also *Sanchez v. Truck Ins. Exchange* (1994) 21 Cal.App.4th 1778, 1786-1787 [26 Cal.Rptr.2d 812] [same as to direct action (Ins. Code, § 11580) on stipulated judgment].)

■ *Roman,* however, is itself crucially distinguishable from the case at bench; in *Roman,* the insurer, denying coverage, had refused its client a defense. (*Roman, supra,* 26 Cal.App.4th at p. 180.) As we have explained in previous cases, the denial of coverage and a defense entitles the policyholder to make a reasonable, noncollusive settlement without the insurer's consent and to seek reimbursement for the settlement amount in an action for breach of the covenant of good faith and fair dealing. " '[W]here the insurer has repudiated its obligation to defend[,] a defendant in the absence of fraud may, without forfeiture of his right to indemnity, settle with the plaintiff upon the best terms possible, taking a covenant not to execute.' " (*Samson v. Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 240 [178 Cal.Rptr. 343, 636 P.2d 32], quoting *Zander v. Texaco, Inc.* (1968) 259 Cal.App.2d 793, 802 [66 Cal.Rptr. 561].)

"In effect, when the insured tenders the suit, the carrier is receiving its chance to be heard. Having rejected the opportunity and waived the chance to contest liability, it cannot reach back for due process to void a deal the insured has entered to eliminate personal liability." (Note, *Assignments of Rights and Covenants Not to Execute in Insurance Litigation* (1997) 75 Tex. L.Rev. 1373, 1399.) Thus, the policyholder denied a defense for covered claims by its liability insurer may make a reasonable settlement with the plaintiff, in good faith, and then maintain (or assign) an action against the insurer for breach of its defense duties. In such an action, "a reasonable

settlement made by the insured to terminate the underlying claim against him may be used as presumptive evidence of the insured's liability on the underlying claim, and the amount of such liability." (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 791 [244 Cal.Rptr. 655, 750 P.2d 297] (*Isaacson*).)

The *Roman* court, therefore, correctly asked whether the stipulated judgment was the product of collusion (*Roman, supra,* 26 Cal.App.4th at p. 184), for absent such abuse a reasonable settlement presumptively shows the damages resulting from the insurer's failure to defend. ■ But where, as here, the insurer has *accepted* defense of the claim, and might have prevailed at trial had the insured and the claimants not settled without the insurer's participation, no presumption of the insured's liability generally arises from the fact or amount of settlement. (*Isaacson, supra,* 44 Cal.3d at pp. 793-794.) Section 877.6 approval may help to show the absence of collusion, but, collusion aside, we must ask whether approval of a stipulated judgment under section 877.6 is sufficient to show, even presumptively, the existence and extent of the insured's liability to the claimants.

We conclude that section 877.6 approval cannot transform an agreed judgment that, by covenant, the insured will never have to pay, into a determination of the existence and extent of the insured's liability. The statutory effect of a good faith finding under section 877.6 is to bar actions for contribution or indemnity by joint tortfeasors or co-obligors not participating in the settlement. (§ 877.6, subd. (c).) ■ The court, in making a good faith ruling, must attempt to determine "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportionate share of comparative liability for the plaintiff's injuries." (*Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499 [213 Cal.Rptr. 256, 698 P.2d 159].) The purpose of a section 877.6 hearing is thus to ensure fairness to absent tortfeasors, not fairness to the settling defendant's insurer.

■ As the Court of Appeal below explained: "The [settlement] court's primary concern is whether, assuming liability, the settling tortfeasor is paying *less* than its proportionate share of the plaintiff's loss, and the evidence submitted by the parties is relevant to that question. . . . [¶] The concerns of the settling tortfeasor's insurance company, however, are quite different. The insurer is concerned with whether its insured too easily is admitting liability, or is agreeing to pay *more* than its proportionate share of the plaintiff's loss. The . . . section 877.6 hearing is not designed to test those questions. It follows that for purposes of a dispute between the settling tortfeasor and its insurance company, the evidentiary showing made at the . . . section 877.6 proceedings cannot be a substitute for an actual trial."

True, the special master overseeing the settlement and good faith hearing in this case made certain findings suggesting the $3 million stipulated judgment was not unreasonably high. For example, the master observed that the stipulated judgments "involve the three franchises (Walnut Creek, Sacramento and San Diego) where plaintiffs' evidence is the strongest and where the largest number of class members are likely to have been interviewed," and that the stipulated amounts "are far lower than plaintiffs could potentially have won at trial." But while these remarks may help to show that the stipulated amounts were in a general sense reasonable in light of the franchisees' exposure, they do not amount to judicial findings that the franchisees were actually liable in the amounts stipulated. No evidentiary hearing was held to determine VLP's liability; the settlement, of which the stipulated judgment, assignment and covenant not to execute were parts, was the product of negotiation, not factfinding. When the settlement was reached, discovery had long been stayed; the "evidence" to which the special master referred consisted of hearsay statements in reports by plaintiffs' investigators, rather than deposition testimony, answers to interrogatories or requests for admission. The master's report reveals no specific support for the $3 million stipulated judgment against VLP. Of course, VLP never agreed to pay that amount—the settlement was premised, instead, on plaintiffs' potential recovery from Maryland in the present action. Maryland neither accepted nor opposed the settlement and, given an opportunity, could not have realistically opposed the settlement without risking further liability for acting against the interest of its insured.

Under these circumstances, we need not find the stipulated judgment collusive in order to refuse it any weight or effect in the present action. A defending insurer cannot be bound by a settlement made without its participation and without any actual commitment on its insured's part to pay the judgment, even where the settlement has been found to be in good faith for purposes of section 877.6.

*Isaacson, supra,* 44 Cal.3d 775, upon which plaintiffs rely, is not to the contrary. In *Isaacson,* the California Insurance Guarantee Association (CIGA), having assumed the defense of a medical malpractice action in place of an insolvent liability insurer, refused the claimant's settlement demand of $500,000 (CIGA's statutory liability limit). Ultimately, CIGA agreed to pay $400,000, and the insureds contributed $100,000 to conclude the settlement. The insureds then sued CIGA for reimbursement of the $100,000 payment. (*Id.* at pp. 782-783.)

We held that CIGA, like a private insurer, had a duty to accept a reasonable settlement demand, limited in CIGA's case to demands under the

statutory ceiling. (*Isaacson, supra,* 44 Cal.3d at p. 792.) If the *Isaacson* plaintiffs were able to prove that CIGA breached that duty in refusing the claimant's $500,000 demand, we further explained, "they could then proceed to prove damages, based on the amount of the settlement they entered into." (*Id.* at p. 793.) The settlement, however, created no presumption that the demand was reasonable (*id.* at pp. 793-794), and absent such a presumption we found the evidence insufficient to show CIGA's breach (*id.* at p. 794).

■■ *Isaacson* indicates that when an insured, faced with the insurer's unreasonable refusal to pay a settlement demand within the policy limits and exposed to potential personal liability substantially beyond the policy limits, actually contributes payment to conclude the settlement (in which the insurer also participates), the insured may recover the amount of his or her payment from the insurer in an action for bad faith failure to settle. In those circumstances, a bad faith action may be brought by the insured, or the claimant as the insured's assignee, despite the absence of a litigated excess judgment. (Accord, *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15 [68 Cal.Rptr.2d 837] ["We conclude that an insurer potentially can be liable for unreasonably coercing an insured to contribute to a settlement fund, even though (by definition) there is no 'excess judgment' where a case is settled"]; *Smith, supra,* 5 Cal.App.4th at p. 1114 [assigned bad faith action must be premised on "a judgment against the insured (or, if we read the *Isaacson* and *Continental Casualty* [*Co. v. Royal Ins. Co.* (1990) 219 Cal.App.3d 111 [268 Cal.Rptr. 193]] decisions correctly, a payment by the insured in settlement of a claim)"].)

■■ *Isaacson* does not hold or suggest, however, that an action for breach of the settlement duty may be brought or assigned where the insured has settled *without* the insurer's participation for an amount *in excess* of the policy limits and avoided any *actual* liability by taking a covenant not to execute. Where, as here, the insured, without the insurer's agreement, stipulates to a judgment against it in excess of both the policy limits and the previously rejected settlement offer, and the stipulated judgment is coupled with a covenant not to execute, the agreed judgment cannot fairly be attributed to the insurer's conduct, even if the insurer's refusal to settle within the policy limits was unreasonable.

The stipulated judgment in this case, therefore, carries no weight in the bad faith action. Absent reliance on the stipulated judgment, moreover, plaintiffs cannot show VLP suffered any damages as a result of Maryland's alleged breach. Although plaintiffs argue VLP also suffered damage in the (so far unfixed) amount of the customer discounts offered under the settlement, the settlement actually calls for the *franchisor,* Great Expectations, to

provide the discounts, albeit "by and through" the franchisees. The complaint in the present action sought damages of "$3,000,000.00 in principal, in light of the judgment," and did not allege any damages corresponding to the discount packages. The parties' statements of undisputed facts submitted on the summary judgment motions, similarly, do not disclose any actual cost VLP has incurred in connection with the discount agreement. Even assuming, therefore, that the costs of discount packages could fairly be said to have resulted from Maryland's failure to settle the underlying suit, plaintiffs have not sought recovery of such costs or presented any evidence as to what, if any, discount costs VLP actually bore.

Plaintiffs contend a rule barring an action for bad faith failure to settle in the present circumstances deprives policyholders whose insurers have breached their settlement obligations of essential protections. An insured should, they insist, be permitted to avoid further injury from the breach by reaching a reasonable settlement with the claimant. In the present case, plaintiffs argue, VLP did just that: it mitigated its damages from Maryland's refusal to pay the proposed $1 million settlement by agreeing to a $3 million stipulated judgment, thereby avoiding a potentially much larger judgment against it at trial.

An insured that believes its insurer has rejected a reasonable settlement demand within policy limits has, however, other means of minimizing further injury to itself. For example, as in *Isaacson*, where the insurer is also willing to contribute some part of the demanded settlement figure, the insured may conclude a favorable settlement by contributing the deficit itself and, assuming the insurer's breach can be proven, recover the payment in a subsequent action for breach of the covenant of good faith and fair dealing. (*Isaacson*, *supra*, 44 Cal.3d at p. 793.)[2] Alternatively, if the claimant is willing, an exchange of an assignment and a covenant not to execute can be made before trial, eliminating the insured's personal exposure to an excess judgment. "The insured's remedy to protect himself from an excess judgment is to assign to the claimant his cause of action for bad faith refusal to settle in exchange for a covenant not to enforce the judgment against the insured's personal assets. [Citation.] This assignment, however, is not immediately assertable, and it does not settle the third party's claim. As long as the insurer is providing a defense, the insurer is allowed to proceed through trial to judgment. The assignment of the bad faith cause of action becomes operative after the excess judgment has been rendered." (*Safeco*, *supra*, 71 Cal.App.4th at pp. 788-789.)

---

[2]*Isaacson* did not discuss the availability of tort damages in such a suit against a private insurer, and in the present case only a breach of contract is claimed. We express no opinion, therefore, as to whether an insured is limited to recovering the amount of its contribution or may seek other types of damages as well.

Plaintiffs complain that because any punitive damages included in the excess judgment are not recoverable against the insurer in an action for bad faith failure to settle (*PPG Industries, supra*, 20 Cal.4th at p. 313), the *Safeco* court's pretrial assignment approach does not protect policyholders from having to pay such damages personally. But personal payment of punitive damages is precisely the legal policy we sought to vindicate in *PPG Industries* (see 20 Cal.4th at pp. 316-318), and the approach urged by plaintiffs— allowing the claimant and the insured, without the insurer's participation, to negotiate the amount of the insured's liability for purposes of the bad faith action—would, contrary to that policy (as understood by the *PPG Industries* majority), permit potential punitive damages to be covertly shifted to the insurer.

Plaintiffs cite a number of decisions from other jurisdictions that they claim support their position. Courts in some states have, in a variety of circumstances, given effect to reasonable stipulated judgments coupled with assignments and covenants not to execute,[3] though the state high court treating these issues most thoroughly concluded pretrial assignments should generally be unenforceable against a defending insurer.[4] No decision we have found holds that a stipulated judgment in excess of the policy limits, for which the insured is relieved from personal liability by a covenant not to execute, may be deemed even a presumptive determination of the insured's damages in an action against a defending insurer for breach of its settlement duty.

Finally, plaintiffs argue that if a bad faith action could be presumptively based on a stipulated judgment like the present one, an insurer would nonetheless be protected against unfair inflation of the stipulated judgment

---

[3]See, e.g., *United Services Auto. Ass'n v. Morris* (1987) 154 Ariz. 113 [741 P.2d 246, 253] (stipulated judgment within policy limits binding on insurer that defended under reservation of rights if, and only if, claimant can prove the settlement was reasonable and prudent); *Miller v. Shugart* (Minn. 1982) 316 N.W.2d 729, 735 (insurer that defended while contesting coverage by declaratory relief action may be bound by stipulated judgment, up to the policy limits, to the extent claimant proves it was reasonable and prudent); *Chaussee v. Maryland Cas. Co.* (1991) 60 Wash.App. 504 [803 P.2d 1339, 1342-1343] (insurer that defended under reservation of rights but misrepresented policy limits may be liable for stipulated judgment in excess of limits, but claimant bears burden of showing reasonableness of the settlement).

[4]*State Farm Fire and Cas. Co. v. Gandy* (Tex. 1996) 925 S.W.2d 696, 714; see also *Burbach v. Armstrong Rigging and Erecting* (Minn.Ct.App. 1997) 560 N.W.2d 107, 109-110 (holding *Miller v. Shugart, supra*, 316 N.W.2d 729, not applicable where one of two potentially responsible insurers defended insured without reservation of rights and offered to contribute to settlement; stipulated judgment not enforceable against other insurer); Note, *Judicial Approaches to Stipulated Judgments, Assignments of Rights, and Covenants Not to Execute in Insurance Litigation* (1999) 47 Drake L.Rev. 853, 874 (stipulated judgment with assignment and covenant should be enforceable "only when the insured is truly abandoned by the provider").

by its ability to litigate, in the bad faith action, both the question of its own breach and "the amount of its policyholder's damages from that breach." Whether plaintiffs envision litigating the reasonableness of the stipulated judgment, or litigating the insured's actual liability to the claimant, is unclear. If the former, we repeat that reasonableness of the stipulated figure is insufficient to show the insured's damages where the insured, by agreement with the claimant, does not bear any actual liability for the stipulated figure. If the latter, plaintiffs do not explain how holding a trial on the insured's underlying liability within the trial of the bad faith action offers any legitimate advantage over the *Safeco* approach of trying liability in the underlying case after the exchange of an assignment for a covenant not to execute. As the court in *Smith* observed, moreover, the trial-within-a-trial approach threatens to unfairly prejudice the insurer, since "the issue of the insured's liability and insurance coverage will be combined in the action against the insurer." (*Smith, supra,* 5 Cal.App.4th at p. 1112; see Evid. Code, § 1155 [evidence of insurance coverage inadmissible to show negligence or wrongdoing].)

For the above reasons, we conclude plaintiffs' action for breach of the duty of reasonable settlement cannot be maintained. In light of this conclusion, we do not reach the question whether the action was also barred by a so-called no-action clause in the Maryland/VLP insurance policy.

### DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Chin, J., Brown, J., and Moreno, J., concurred.