Filed 3/18/21 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ALEXANDER PINTO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FARMERS INSURANCE EXCHANGE,<br><br>    Defendant and Appellant. | B295742<br><br>(Los Angeles County<br>Super. Ct. No. BC631341)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed hereon on March 8, 2021, be modified as follows:

1.    The date 2019 is changed to 2013 in the first and last paragraphs of page six, the first and third paragraphs of page seven, the last paragraph of page eight, and the second paragraph of page nine.

2.    The penultimate sentence of the second paragraph on page five is modified to read: "The report indicated that Martin and Williams said Orcutt was driving, and that a firefighter overheard Orcutt admit she was driving."

This modification effects no change in the judgment.

_____

ROTHSCHILD, P. J.        CHANEY, J.        BENDIX, J.

Filed 3/8/21 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ALEXANDER PINTO, | B295742 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC631341) |
| v. | |
| FARMERS INSURANCE EXCHANGE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Samantha P. Jessner, Judge. Reversed and remanded.

Horvitz & Levy, Mitchell C. Tilner, Karen M. Bray; Haight Brown & Bonesteel, Richard E. Morton, Valerie A. Moore, and Christopher Kendrick for Defendant and Appellant.

Sheppard, Mullin, Richter & Hampton, Peter Klee, Charles A. Danaher, John T. Brooks, and Theona Zhordania for Allstate Insurance Company, Crusader Insurance Company, Government Employees Insurance Company, Infinity Insurance Company, Interinsurance Exchange of the Automobile Club, Loya Insurance

Company, Mercury Insurance, and Western General Insurance Company as Amici Curiae on behalf of Defendant and Appellant.

Hinshaw & Culbertson, Royal F. Oaks, Michael A.S. Newman for Pacific Association of Domestic Insurance Companies, National Association of Mutual Insurance Companies, and American Property Casualty Insurance Association as Amici Curiae on behalf of Defendant and Appellant.

Law Office of Bruce Palumbo, Bruce Palumbo; The Yarnall Firm, Delores A. Yarnall; Dewitt Algorri & Algorri, Mark S. Algorri and Carolyn Li-Jun Tan for Plaintiff and Respondent.

Shernoff Bidart Echeverria, Ricardo Echeverria, Steven Schuetze, and Kristin Hobbs for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Respondent.

_____

In this case the victim of a single-car traffic accident offered to settle his claim against the vehicle's owner in exchange for payment of the owner's insurance policy limits. The insurer failed to accept the offer, which then lapsed. After the victim obtained a judgment against the owner far in excess of policy limits, the owner assigned her claims against the insurer to the victim, who then sued the insurer for bad faith. At trial, extensive evidence was presented by both sides concerning the reasonableness of the insurer's conduct both in adjusting the victim's claim and in failing to accept his offer. The special verdict form, however, asked nothing about the reasonableness of the insurer's conduct, and the jury made no finding that the insurer acted unreasonably in any respect. The jury nevertheless

2

found for the plaintiff, and judgment was entered against the insurer based solely on the special verdict.

We reverse. A bad faith claim requires a finding that the insurer acted unreasonably in some respect. Because the jury made no such finding (not having been asked for one), the judgment must be vacated and a contrary judgment entered for the insurer.

## BACKGROUND

### A. The Accident and Farmers' Investigation

At about 6:00 p.m. on March 31, 2013, Alaxandrea Martin was a passenger in her pickup truck with Dana Orcutt, Alexander Pinto, and Anthony Williams on the way back from a party at Lake Havasu, Arizona, where drugs and alcohol had been present. The truck went off the road in Arizona and flipped, injuring all four occupants.

The truck was covered by a policy issued by Farmers Insurance Exchange, with bodily injury liability limits of $50,000 per person and $100,000 per occurrence. The policy covered Martin and any permissive driver.

Martin's insurance agent reported the accident to Farmers on April 9, 2013, and Farmers appointed Leann Lawler to investigate the accident and evaluate liability and coverage.

The next day, Martin's mother, Laura Martin, reported to Lawler that the vehicle had rolled, causing serious injuries to the occupants. (For clarity, we will sometimes refer to the Martins by their first names.) Alaxandrea, who suffered brain damage in the accident and had only recently emerged from a coma, could remember nothing after 1:00 p.m. on the day of the accident. Laura reported that Orcutt was driving when the truck went off

3

the road, but she (Orcutt) was now denying having been the driver. Laura reported that Pinto had been paralyzed.

Alaxandrea told Lawler that she had been drinking before the accident and was currently under heavy medication and could not remember who was driving.

Orcutt refused to respond to Lawler's repeated phone calls or messages.

On April 22, 2013, Laura Martin reiterated that Orcutt had been the driver, and said Alaxandrea told her that she (Alaxandrea) initially gave her keys to Pinto to drive, but he gave them to Orcutt, who had also been drinking. Laura stated that Alaxandrea believed Orcutt lacked insurance due to her license having been suspended for a DUI.

On April 26, 2013, Lawler called Laura Martin again and asked for contact information for Pinto and Williams, but Laura had none.

Farmers then assigned adjustment of any claim to Tanya Cannon.

On April 29, 2013, Orcutt reported to Cannon that she had been injured in the accident and could not remember who was driving. She admitted she had driven Martin's truck in the past, but could not differentiate the latest trip from the 40 to 50 other Havasu trips she and Martin had made. However, she believed she was not the driver in this instance because after receiving a DUI the year before she had resolved never to drink and drive again. Orcutt stated that she had filed an SR-22 (a post-DUI financial responsibility statement), and might have insurance through her mother, with whom she lived.

The next day, on April 30, 2013, Alaxandrea Martin told Cannon that she now remembered that Orcutt had been driving,

4

but Alaxandrea still could not recall how she (Orcutt) ended up behind the wheel. Attributing Alaxandrea's recall difficulty to her traumatic brain injury and to there having been "lots of drugs and alcohol involved that day," Cannon continued to investigate the accident to determine liability, coverage, and applicable insurance.

The Arizona police report stated that Martin's truck, with Orcutt driving while under the influence of alcohol, swiped a guardrail, went off the road and up a hill with no braking or evasive steering, became airborne, and landed upside down. The report related Orcutt's statements to police that she could not remember the accident. She told police she believed Williams was supposed to be driving, but said, "but everyone keeps saying I was driving." The report indicated that a firefighter overheard Orcutt, Martin, and Williams say that Orcutt was driving. The report concluded that Orcutt committed three counts of aggravated assault while under the influence of alcohol.

One of the witnesses identified in the report told Cannon that Orcutt was extremely intoxicated at the accident scene, and had said, " 'I'm going to jail for what I did.' "

Cannon tendered the $100,000 bodily injury policy limits to all injured parties except Orcutt, whom Cannon determined was likely the at-fault driver. Cannon requested that Orcutt let Cannon know if she had other coverage, but Orcutt never responded.

On July 5, 2013, Laura Martin advised Cannon that Orcutt "had been driving on a SR-22" as a result of a "prior DUI," and would be prosecuted for assault in Arizona.

**B.    Pinto's Demand**

On July 1, 2019, Ernest Algorri, Pinto's attorney, sent a letter to Cannon offering to settle Pinto's insurance claim against Alaxandrea Martin.  (Cannon did not receive the letter until July 5, because although she had previously given Algorri her fax number, he chose to mail the letter to Farmers' document center in Oklahoma.)   The letter referenced a "Case Name":  Pinto v. Orcutt and Williams, and represented that Pinto had been rendered quadriplegic in the accident.  The letter repeatedly referred to Farmers' "insured," which the caption identified solely as Alaxandrea Martin, neglecting to include Orcutt as a possible insured under the policy's permissive driver clause.  In the letter, Pinto offered "to accept the liability and medical payment limits in full and complete settlement of [his] personal injury claim."

Pinto demanded that the "insured" provide a release, a declaration that the insured had not been acting within the course and scope of her employment at the time of the accident, and a copy of any applicable insurance policy.  The offer stated it would expire in 15 days, on July 16.  (With the intervention of two weekends and the July 4 holiday, plus delay caused by Algorri mailing the letter to Oklahoma, this gave Farmers eight workdays to accept the offer.)

**C.    Farmer's Response to the Demand**

Cannon assumed that Pinto's demand was directed to both Martin as the named insured and Orcutt as the permissive driver and additional insured, and forwarded the offer to them the following day, July 6.

On July 9, 2019, Algorri told Cannon that he needed to inspect Martin's truck to evaluate a potential claim against GM.

On July 11, 2019, Cannon, still not having heard back from Orcutt, retained a private investigator to locate her and obtain information about the accident and any other insurance she might have. On July 13, the investigator reported that Orcutt had been located. She told the investigator that she had no other insurance and had not been acting within the course and scope of any employment when the accident occurred. Orcutt never responded on this or any other occasion to Cannon's many requests for a declaration to this effect.

Also on July 11, Cannon called Algorri three times and left messages requesting an extension of time on the offer deadline. Algorri never responded.

Cannon retained an attorney, Limor Lehavi, to help with Pinto's claim. On July 15, 2019, Lehavi faxed a letter to Algorri tendering the $50,000 per person bodily injury policy limits to resolve Pinto's claims "against any and all insureds under the policy." In the letter, Lehavi asked whether Pinto's offer pertained to both the named insured and the permissive driver, and informed Algorri that Farmers could not pay policy limits without a release of all of its insureds. Lehavi noted that Algorri had not provided a declaration form as promised, and enclosed a proposed declaration form, asking if it was acceptable. Lehavi asked Algorri to confirm that Farmers providing the text of the policy satisfied Pinto's demand for policy information, as Orcutt had represented that she possessed no other insurance, and asked whether Pinto intended to pursue a claim against GM, which might expose Farmers' insureds to a cross-complaint by GM and therefore delay Farmers from paying out policy limits. Lehavi asked whether Pinto had any pending medical liens, which must be resolved as part of any settlement, and asked

whether Pinto was married, as any spouse would need to be included in Pinto's release. Lehavi stated that Farmers had insufficient time to comply with all of the conditions of Pinto's demand, and requested an extension of 30 days.

Algorri responded that "The term 'insured' in Mr. Pinto's offer means all insureds, including the driver, Dana Orcutt." Algorri informed Lehavi that Pinto was unmarried, and advised that Farmers had until 5:00 p.m. the next day to meet all conditions of the offer. Algorri failed to respond to Lehavi's other inquiries.

Before the 5:00 p.m. deadline on July 16, Farmers hand-delivered a letter to Algorri's office accepting Pinto's offer. The letter enclosed a $50,000 check and a form releasing Martin and Orcutt, and stated that "Farmers hereby accepts your client Alexander Pinto's settlement demand for a release from liability of Alexandrea Martin and Dana Orcutt, and their heirs and assigns, in exchange for a payment of the Farmers per person policy limits of $50,000."

Farmers faxed Algorri a declaration from Martin that same day before the deadline, but was never able to obtain one from Orcutt.

On July 17, 2019, Algorri rejected Farmers' tender on the ground that Farmers had failed to "unconditionally accept [Pinto's] generous offer to settle his case." Algorri said, "Farmers apparently failed to perform even the most perfunctory investigation and consequently has been unable to provide my client with the most basic and critical information set forth in his offer: reasonable proof of Ms. Orcutt's complete policy limits and course and scope status. . . . [M]y client, with his astronomical medical bills and devastating injuries, would be a fool to accept

8

Farmers' $50,000.00 without knowing the exhaustive policy limits *or course and scope[] status of Ms. Orcutt.* [¶] . . . . Suit will soon be filed so that my client can discover that information which Farmers failed to provide." (Italics added.)

## D.    Litigation

On August 7, 2019, Pinto sued Orcutt and Martin for negligence. The lawsuit settled, with an agreement that: (1) Orcutt and Martin would assign all their rights against Farmers to Pinto; (2) the settlement would be treated as the equivalent of a $10 million judgment; and (3) the insurers (another insurer had been found for Orcutt) would pay Pinto their combined policy limits of $65,000.

Pinto then filed this action against Farmers, asserting claims against the insurer that Martin and Orcutt had assigned to him. Pinto alleged that Farmers acted in bad faith towards its insureds Martin and Orcutt by failing to accept his settlement demand.

At trial, much of the evidence concerned Farmers' claims adjustment prior to and after Pinto's settlement offer. Farmers repeatedly argued, over Pinto's repeated objections, that to establish bad faith Pinto had to prove Farmers acted unreasonably in failing to accept his demand. The court declined to so instruct the jury, and the special verdict form contained no question relating to the reasonableness of Farmers' conduct.

The jury made three findings as to Farmers' conduct toward Martin: (1) Pinto made a reasonable settlement demand; (2) Farmers "fail[ed] to accept a reasonable settlement demand"; and (3) a monetary judgment had been entered against Martin in Pinto's earlier lawsuit.

The jury made those same findings as to Farmers' conduct toward Orcutt, plus three more: (4) Orcutt failed to cooperate with Farmers; (5) Farmers "use[d] reasonable efforts to obtain Orcutt's cooperation"; and (6) Orcutt's lack of cooperation prejudiced Farmers.

The jury made no finding that Farmers acted unreasonably in any respect.

Following the verdicts, Farmers argued it could not have accepted Pinto's settlement offer on behalf of Martin alone because Orcutt was also a potential insured. It argued that the jury's finding that Orcutt failed to cooperate established that Farmers did not act unreasonably, and was thus entitled to judgment on Pinto's bad faith claim.

The court rejected the arguments and entered judgment for Pinto for $9,935,000.

Farmers appeals.

After oral argument, we invited and received supplemental briefing from the parties.

## DISCUSSION

Farmers contends the judgment must be vacated because the jury did not find, and no evidence established, that it acted unreasonably in failing to settle Pinto's claim against Martin. Pinto counters that failure to accept a reasonable settlement offer is itself unreasonable per se.

## I.     Whether the Verdict Supports the Judgment

The issue is whether, in the context of a third party insurance claim, failing to accept a reasonable settlement offer constitutes bad faith per se. We conclude it does not.

10

## A. Legal Principles

### 1. Bad Faith Liability Requires a Finding that the Insurer Acted Unreasonably

"In each policy of liability insurance, California law implies a covenant of good faith and fair dealing. This implied covenant obligates the insurance company, among other things, to make reasonable efforts to settle a third party's lawsuit against the insured. If the insurer breaches the implied covenant by unreasonably refusing to settle the third party suit, the insured may sue the insurer in tort to recover damages proximately caused by the insurer's breach." (*PPG Industries, Inc. v. Transamerica Ins. Co.* (1999) 20 Cal.4th 310, 312.)

In evaluating whether an insurer acted in bad faith, "the critical issue [is] the reasonableness of the insurer's conduct under the facts of the particular case." (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 723.) To hold an insurer liable for bad faith in failing to settle a third party claim, the evidence must establish that the failure to settle was unreasonable.

### 2. An Insurer's Failing to Accept a Reasonable Offer is not Unreasonable Per Se

An offer to settle an insurance claim is generally multidimensional, the most obvious component being the amount demanded. Other components include the conditions for acceptance and the scope of any release.

An insurer's duty to accept a reasonable settlement offer is not absolute. " '[I]n deciding whether or not to settle a claim, the insurer must take into account the interests of the insured, and when there is a great risk of recovery beyond the policy limits, a good faith consideration of the insured's interests *may* require the insurer to settle the claim within the policy limits. An

11

*unreasonable* refusal to settle may subject the insurer to liability for the entire amount of the judgment rendered against the insured, including any portion in excess of the policy limits. (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658-661 [(*Comunale*)].)' [Citation.]" (*Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718, 724-725, italics added.)

Therefore, failing to accept a reasonable settlement offer does not necessarily constitute bad faith. "[T]he crucial issue is . . . the basis for the insurer's decision to reject an offer of settlement." (*Walbrook Ins. Co. v. Liberty Mutual Ins. Co.* (1992) 5 Cal.App.4th 1445, 1460.) "[M]ere errors by an insurer in discharging its obligations to its insured ' "does not necessarily make the insurer liable in tort for violating the covenant of good faith and fair dealing; to be liable in tort, the insurer's conduct must also have been *unreasonable*." ' " (*Graciano v. Mercury General Corp.* (2014) 231 Cal.App.4th 414, 425.) "[S]o long as insurers are not subject to a strict liability standard, there is still room for an honest, innocent mistake." (*Walbrook*, at p. 1460; accord *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1280 ["erroneous denial of a claim does not alone support tort liability; instead, tort liability requires that the insurer be found to have withheld benefits unreasonably"].)

A claim for bad faith based on the wrongful refusal to settle thus requires proof the insurer unreasonably failed to accept an offer. (*Critz v. Farmers Ins. Group* (1964) 230 Cal.App.2d 788, 798, disapproved on other grounds in *Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 433.)

Simply failing to settle does not meet this standard. A facially reasonable demand might go unaccepted due to no

fault of the insurer, for example if some emergency prevents transmission of the insurer's acceptance.

### 3. Standards of Review

When a plaintiff's verdict is challenged for lack of substantial evidence, we must determine whether there is evidence that is " ' "reasonable in nature, credible, and of solid value; [constituting] 'substantial' proof of the essentials which the law requires in a particular case." ' " (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336.)  To do so, we first resolve all explicit conflicts in the evidence and presume all reasonable inferences in favor of the verdict. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632.)  We then determine whether evidence supporting the verdict is substantial.  "[T]his does not mean we must blindly seize any evidence in support of the respondent in order to affirm the judgment.  The Court of Appeal 'was not created . . . merely to echo the determinations of the trial court.  A decision supported by a mere scintilla of evidence need not be affirmed on review.'  [Citation.]  '[I]f the word "substantial" [is to mean] anything at all, it clearly implies that such evidence must be of ponderable legal significance.  Obviously the word cannot be deemed synonymous with "any" evidence.  It must be reasonable . . . , credible, and of solid value . . . .' " (*Id.* at p. 1633.)  "The ultimate determination is whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record.  [Citation.]  While substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; inferences that are the result

13

of mere speculation or conjecture cannot support a finding." (*Ibid.*)

Although "the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." (*Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co.* (2001) 90 Cal.App.4th 335, 346.)

The correctness of a special verdict is analyzed as a matter of law and is subject to de novo review. (*Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1092.)

### B. The Verdict was Facially Deficient

The special verdict here was facially insufficient to support a bad faith judgment because it included no finding that Farmers acted unreasonably in failing to accept Pinto's settlement offer.

"If a fact necessary to support a cause of action is not included in . . . a special verdict, judgment on that cause of action cannot stand." (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 531.)

As to Martin, the verdict form asked only three questions: Whether Pinto made a reasonable offer; whether Farmers failed to accept the offer; and whether Martin assigned her judgment against Farmers to Pinto. These questions were necessary, but not sufficient. The verdict form failed to ask whether Farmers acted unreasonably in failing to accept Pinto's offer.

The special verdict was patterned on CACI No. 2334, which the trial court gave as follows: "Mr. Pinto claims that he was harmed by Farmers' breach of the obligation of good

14

faith and fair dealing because Farmers failed to accept a reasonable settlement demand made by Mr. Pinto.  To establish this claim, Mr. Pinto must prove all of the following: [¶]  1.  That Mr. Pinto made a reasonable settlement demand; [¶]  2.  That Farmers failed to accept a reasonable settlement demand for an amount within policy limits; and  [¶]  3.  A monetary judgment was entered in [Pinto's underlying case against Martin and Orcutt] for a sum greater than the policy limits that was assigned to Mr. Pinto.

" 'Policy limits' means the highest amount available under the Farmers policy for the claim that was assigned to Mr. Pinto.  [¶]  A settlement demand for an amount within policy limits is reasonable if Farmers knew or should have known at the time the demand was rejected that the potential judgment was likely to exceed the amount of the demand based on Mr. Pinto's injuries or loss and the insured's or insureds' probable liability.  However, the demand may be unreasonable for reasons other than the amount demanded."

The enumerated elements of CACI No. 2334 present two issues:  Whether the plaintiff was harmed and whether the insurer's failure to settle caused the harm.  No element addresses whether the insurer's failure to settle was unreasonable.

CACI No. 2337, a modified version of which was presented to the jury, lists 16 examples of potentially unreasonable conduct, including failure *for improper reasons* to settle a claim.[1]  But no element from this instruction was

---

[1] CACI No. 2337 instructs, in pertinent part, the following:

15

reflected in the verdict form, and neither it nor or any other instruction nor any authority posits that failure to accept a reasonable settlement is unreasonable per se.

Relying on *Comunale, supra*, Pinto argues that the Supreme Court held in a third-party duty to settle case that a carrier's failure to accept a reasonable offer to settle within policy limits constitutes a breach of the covenant of good faith and fair dealing as a matter of law.

This was not *Comunale's* holding. There, an insurer refused to accept a traffic accident victim's settlement offer.

---

"In determining whether [defendant] acted unreasonably, that is, without proper cause, you may consider whether the defendant did any of [16 specified acts]," including: "[(e) Did not attempt in good faith to reach a prompt, fair, and equitable settlement of [plaintiff]'s claim after liability had become reasonably clear.]"; "[(f) Required [plaintiff] to file a lawsuit to recover amounts due under the policy by offering substantially less than the amount that [plaintiff] ultimately recovered . . .]"; "[(g) Attempted to settle [plaintiff]'s claim for less than the amount to which a reasonable person would have believed [plaintiff] was entitled . . .]"; "[(h) Attempted to settle the claim on the basis of an application that was altered without notice to, or knowledge or consent of, [plaintiff] . . .]"; "[(*l*) Failed to settle a claim against [plaintiff] promptly once . . . liability had become apparent . . . in order to influence settlements under other portions of the insurance policy coverage.]"; "[(m) Failed to promptly provide a reasonable explanation of its reasons for denying the claim or offering a compromise settlement . . .]."

"The presence or absence of any of these factors alone is not enough to determine whether [name of defendant]'s conduct was or was not unreasonable, that is, without proper cause. You must consider [name of defendant]'s conduct as a whole in making this determination."

16

The Court held that "the implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case." (*Comunale, supra*, 50 Cal.2d at p. 659.)  "The insurer, in deciding whether a claim should be compromised, must take into account the interest of the insured and give it at least as much consideration as it does to its own interest. [Citation.]  When there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim." (*Ibid*.)  The Court concluded it is unreasonable for an insurer to reject a settlement demand because of a coverage dispute.

 *Comunale* simply held that an insurer may not put its own interests before the insured's when "the most reasonable manner of disposing of the claim is a settlement." (*Comunale, supra*, 50 Cal.2d at p. 659.)  The Court did not discuss rejecting settlement for reasons outside of coverage disputes, and did not hold that failure to settle is unreasonable whenever the offer itself is reasonable.

 Pinto relies on two further Supreme Court cases which are to the same effect as *Comunale* and no more apposite: *Crisci v. Security Ins. Co., supra*, 66 Cal.2d 425, and *Johansen v. California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9.)

 We reiterate the Court's latest statement on the matter: " '[A] good faith consideration of the insured's interests *may* require the insurer to settle the claim within the policy limits. An *unreasonable* refusal to settle may subject the insurer to liability for the entire amount of the judgment rendered

17

against the insured, including any portion in excess of the policy limits.' " (*Hamilton v. Maryland Casualty Co.*, *supra*, 27 Cal.4th at pp. 724-725, italics added; see also *Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 401 ["An insurer that breaches its implied duty of good faith and fair dealing by *unreasonably* refusing to accept a settlement offer within policy limits may be held liable for the full amount of the judgment against the insured in excess of its policy limits" (italics added)]; *Commercial Union Assurance Companies v. Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 916-917 ["an insurer may be held liable for a judgment against the insured in excess of its policy limits where it has breached its implied covenant of good faith and fair dealing by *unreasonably* refusing to accept a settlement offer within the policy limits" (italics added)].)

The Court has never held that failure to accept a reasonable settlement is per se unreasonable.

Although CACI No. 2334 describes three elements necessary for bad faith liability, it lacks a crucial element: Bad faith. To be liable for bad faith, an insurer must not only cause the insured's damages, it must act or fail to act without proper cause, for example by placing its own interests above those of its insured.

### C.    The Judgment is Defective

A special verdict based solely on an insufficient jury instruction cannot support a judgment. The jury was neither asked to nor did find that Farmers acted unreasonably or without proper cause in failing to accept Pinto's settlement offer. Because a cause of action for bad faith requires a finding that the insurer acted unreasonably, the absence of

18

such a finding precludes judgment for the plaintiff on that claim. (*Behr v. Redmond*, *supra*, 193 Cal.App.4th at p. 531.)

Pinto argues that Farmers deliberately sabotaged the settlement by injecting Orcutt into it even though she denied being a permissive driver, took no steps to seek coverage, and in fact disqualified herself from coverage by failing to cooperate. The point is irrelevant because the jury made no findings on these supposed facts. In any event, the record indicates it was Pinto who made Orcutt part of his offer by conditioning settlement on receipt of information from "the insured," which he defined as including both Martin and Orcutt. (He was obliged to do so, as she was likely an additional insured under the policy's permissive driver clause, notwithstanding actions that might later have disqualified her from coverage.) He then rejected Farmers' tender solely because it failed to include "reasonable proof of Ms. Orcutt's complete policy limits and course and scope status," proof that Farmers had no ability to provide.

Pinto recites a litany of other actions Farmers took that establish it unreasonably investigated and settled Martin's claim, which he argues establish that Farmers put its own interests over Martin's. These actions too are irrelevant because the jury made no findings on this issue.

In any event, no evidence suggested Farmers' conduct caused the settlement to fail. Farmers attempted to accept Pinto's settlement offer, and timely tendered both the policy limits and Martin's declaration. Settlement failed only because Pinto rejected the tender on the ground that it failed to include Orcutt's declaration. But no evidence established, and the jury did not find, that Farmers should have done

19

more to obtain that declaration.  On the contrary, the jury expressly found that Farmers "use[d] reasonable efforts to obtain Orcutt's cooperation," and her lack of cooperation prejudiced the insurer.  Farmers therefore did all it could to achieve a settlement.  (See *Lehto v. Allstate Ins. Co.* (1994) 31 Cal.App.4th 60, 73 ["by offering the policy limits in exchange for a release, the insurer has done all within its power to effect a settlement"].)

### D.    Remedy

The question remains what to do about the defective judgment.

The plaintiff "bear[s] the responsibility for a special verdict submitted to the jury on [his] own case" and must therefore ensure that a special verdict allows the jury to " 'resolve all of the ultimate facts' " so that " ' "nothing shall remain to the court but to draw from them conclusions of law." ' " (*Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 959-960; 961-962.)  "It is incumbent upon counsel to propose a special verdict that does not mislead a jury into bringing in an improper special verdict." (*Id.* at p. 960, fn. 8.)  A plaintiff who fails to do so "is bound by the erroneous special verdict." (*Ibid.*)

Pinto argues that Farmers successfully objected to the very "reasonableness" special verdict question that it now argues was required, Proposed Special Verdict Question No. 7.  Under the doctrine of invited error, he argues, Farmers is estopped from urging the defective verdict as a ground for reversal.  We disagree.

20

The " 'doctrine of invited error' is an 'application of the estoppel principle': 'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.) The purpose of the doctrine is to "prevent[] a party from misleading the trial court and then profiting therefrom in the appellate court." (*Ibid.*)

The proposed special verdict question at issue, No. 7, which Pinto proposed and to which Farmers objected, asked: "Did FARMERS breach its duty of good faith and fair dealing to [Martin] by acting unreasonably and by failing to give as much consideration to her interests as they gave to their own interests?"

If the jury answered "no," it was instructed to answer Question No. 9, which asked whether Farmers "fail[ed] to accept a reasonable settlement demand for an amount within [Martin's] policy limits." Question No. 9 eventually became the foundation of the special verdict form.

Farmers objected to Question No. 7, and it was never given.

Question No. 7 would not have been the correct reasonableness question because it asked nothing about the settlement offer, which was discussed only in Question No. 9. Although Pinto complained at length about Farmers' many bad acts, in the end it cured any deficiency by tendering the full $50,000 policy limits. Those acts therefore had nothing to do with Pinto's damages, which comprised solely the loss of that $50,000.

In fact, the jury could not have both answered "yes" to Question No. 7 and made any finding about the settlement

21

offer, because pursuant to Pinto's protocol, Question No. 9, the only question mentioning the settlement offer, would not be encountered should the jury answer yes to Question No. 7. There is therefore no way Question No. 7 could have cured the verdict.

Pinto argues it was *Farmers* that insisted that the special verdict mirror CACI No. 2334, and is therefore responsible for the error. The record is flatly to the contrary. Farmers proposed that a special verdict question mirroring CACI No. 2334 be *modified* to ask whether Farmers' failure to accept Pinto's settlement offer was "the result of unreasonable conduct by Farmers," which Farmers at all times argued was essential to Pinto's bad faith failure-to-settle theory. This would have been the correct question, but Pinto successfully objected to it.

We conclude the defective verdict was accomplished at Pinto's behest. Not only did he fail to propose an appropriate verdict, he also vigorously opposed Farmers' attempts to clarify the erroneous verdict. The proper remedy is to vacate the judgment and enter a new judgment for Farmers. (See *Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 329 [remedy for defective verdict achieved through plaintiff's efforts is to order judgment notwithstanding the verdict]; see also *Myers Building Industries, Ltd. v. Interface Technology, Inc.*, *supra*, 13 Cal.App.4th at p. 960, fn. 8 [plaintiff responsible for erroneous special verdict is bound by the error].)

## DISPOSITION

The judgment is reversed and the matter remanded with directions to enter a new judgment for Farmers.  Farmers is to recover its costs on appeal.

CERTIFIED FOR PUBLICATION


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


BENDIX, J.

23