**OLD REPUBLIC INSURANCE COMPANY, Petitioner/Cross–Respondent**

v.

**Jamie L. ROSS, individually and as natural parent of minor children, Jaylie B. Ross and Jaida S. Ross; Crystal L. Ross, individually and as natural parent of minor children Jon Talon Ross, Tessa M. Ross, Starr L. Ross and Cash D. Ross; Amber Anne Ross; and Brandi Ross, Respondents/Cross–Petitioners.**

No. 06SC257.

Supreme Court of Colorado, En Banc.

March 24, 2008.

Davis Graham & Stubbs LLP, Andrew M. Low, Rudy E. Verner, Elizabeth H. Titus, Denver Colorado, Grund, Dagner & Nelson, P.C., John W. Grund, Della S. Nelson, Denver, Colorado, for Petitioner/Cross–Respondent.

Zarlengo, Mott, Zarlengo & Winbourn, P.C., Zane Moseley, Denver, Colorado, for Respondent/Cross–Petitioner Crystal L. Ross.

Schaden Katzman Lampert & McClune, P.C., Bruce A. Lampert, Broomfield, Colorado, John D. McClune, Troy, Michigan, for Respondent/Cross–Petitioner Jamie L. Ross.

Cage Williams P.C., Mark W. Williams, Melissa M. Kerin, Denver, Colorado, for Amicus Curiae Property Casualty Insurers Association of America.

Roberts Levin & Patterson, P.C., Bradley A. Levin, Denver, Colorado, for Amicus Curiae The Colorado Trial Lawyers Association.

Justice RICE delivered the Opinion of the Court.

This case arises out of an airplane accident near Durango. The passengers' surviving spouses and children ("the Rosses") brought a wrongful death action in state court against the airplane charter company, its president, and the pilot's estate. Old Republic Insurance Company ("Old Republic") insured the charter company and its president (collectively "the defendant-insureds"), but was not originally a party in the state court action. In a separate federal proceeding, Old Republic sought a declaratory judgment to determine its coverage obligation to the defendant-insureds. *Old Republic Ins. Co. v. Durango Air Serv., Inc.,* 283 F.3d 1222, 1223 (10th Cir.2002). In the case at hand, Old Republic appeals the court of appeals' decision in *Ross v. Old Republic Ins. Co.,* 134 P.3d 505, 512 (Colo.App.2006), that Old Republic is obligated to pay the Rosses prejudgment interest on the $1.5 million in unpaid coverage ascertained by the federal court. On cross appeal, the Rosses contest the court of appeals' conclusion that a stipulated judgment arising from a settlement agreement entered into by the Rosses and the defendant-insureds is not enforceable against Old Republic. The Rosses ask us to reinstate the trial court's garnishment order awarding postjudgment interest on the stipulated judgment.

We first consider the trial court's award of postjudgment interest, based on the stipulated judgment, which was vacated by the court of appeals below. We examine the enforceability of the stipulated judgment and the underlying settlement agreement in light of our decision in *Northland Insurance Co. v. Bashor,* 177 Colo. 463, 494 P.2d 1292 (1972). We hold that under the facts of this case, where the insurer has conceded coverage and defended its insured, and where there has been no finding of bad faith against the insurer, a stipulated judgment entered before trial, to which the insurer is not a party, cannot be enforced against the insurer. We thus affirm the court of appeals' holding that the stipulated judgment is unenforceable, and conclude that Old Republic cannot be liable for postjudgment interest on that unenforceable judgment. We next examine whether the court of appeals retained jurisdiction over Old Republic after invalidating the stipulated judgment, such that it could award prejudgment interest to the Rosses. Without drawing a conclusion on the jurisdic-

tion question, we ultimately hold that there is no legal basis for the imposition of prejudgment interest in excess of policy limits in this case. We thus reverse the court of appeals' prejudgment interest award.

## I. Facts and Proceedings Below

When this wrongful death litigation began, Old Republic paid the Rosses $200,000, asserting that this was the maximum coverage available under the defendant-insureds' aviation policy. Old Republic disputed coverage under the defendant-insureds' comprehensive general liability policy ("CGL policy"), which had a policy limit of $1 million. Old Republic rejected the Rosses' settlement offer of $800,000, then sought a declaratory judgment in federal district court to confirm that its obligation to the defendant-insureds was fulfilled by the $200,000 payment. The district court concluded that the maximum coverage under the relevant policies was $1.7 million, and the Tenth Circuit Court of Appeals affirmed. *Old Republic,* 283 F.3d at 1228. Old Republic then paid the Rosses an additional $1.5 million, or $1.7 million less the initial $200,000 payment.

Meanwhile, during the declaratory judgment proceedings, the Rosses entered into a settlement agreement with the defendant-insureds, under which the defendant-insureds consented to the entry of judgment against them in state court for $4 million plus prejudgment interest, resulting in a total judgment of $5.3 million. As consideration for this settlement, the Rosses agreed not to enforce the stipulated judgment against the defendant-insureds, and the defendant-insureds agreed to prosecute claims against Old Republic for the collection of the judgment. The Rosses and the defendant-insureds agreed that if the defendant-insureds' suit against Old Republic was successful, the Rosses would receive the full amount of the stipulated judgment, and the defendant-insureds would retain any compensatory damages awarded above the amount of the judgment. Any punitive damages awarded would be shared between the Rosses and the defendant-insureds. Old Republic was not a party to this settlement agreement. The state district court accepted the agreement and entered judgment against the defendant-insureds for $5.3 million.

As a result of the state and federal cases, there were now two judgments: the state court stipulated judgment for $5.3 million and the federal court declaratory judgment for $1.7 million. Having paid the full extent of the policy according to the declaratory judgment, Old Republic paid nothing pursuant to the stipulated judgment. Old Republic maintained that, even had it not fulfilled the policy limits, it could not be bound by the stipulated judgment because it was not a party to the underlying settlement agreement.

Pursuant to the settlement agreement, the defendant-insureds sued Old Republic for bad faith breach of insurance contract via counterclaims in the federal declaratory judgment proceeding. However, the defendant-insureds eventually dismissed their counterclaims in order to expedite the declaratory judgment. The Rosses then commenced a garnishment proceeding in state court to collect postjudgment interest on the stipulated judgment from Old Republic. The Rosses claimed that Old Republic owed postjudgment interest on the stipulated judgment of $5.3 million, less the $200,000 payment, from the date of the stipulated judgment to the date when Old Republic paid its policy limits shortly after the declaratory judgment. According to the Rosses, Old Republic's obligation for postjudgment interest arose from two different sources. First, the Rosses sought postjudgment interest arising from the supplementary payments provision in Old Republic's CGL policy, which states that the insurer is required to pay, on any judgment entered against it, interest on the entire judgment for the period after entry of the judgment until the insurer has paid that part of the judgment which does not exceed policy limits. Next, because Old Republic did not make this interest payment pursuant to its CGL policy at the time it paid policy limits, the Rosses claimed that, pursuant to section 5–12–102, C.R.S. (2007), Old Republic owed additional statutory interest for "wrongfully withholding" the unpaid interest. This statutory interest would be comprised of interest on the unpaid interest, accruing from the

date Old Republic paid policy limits until the eventual date Old Republic complied with the garnishment order being sought by the Rosses. The trial court agreed with the Rosses on both counts, and entered a garnishment order against Old Republic for approximately $2 million in postjudgment interest over and above the policy limits previously paid.

Old Republic appealed the garnishment order, claiming that there was no valid judgment on which to garnish interest. The court of appeals adopted Old Republic's analysis, holding that the stipulated judgment was not binding on Old Republic in light of the circumstances under which it was entered. The court held that the Rosses could not rely on *Bashor*, 177 Colo. 463, 494 P.2d 1292, for the enforceability of the judgment, indicating that *Bashor* agreements are not recognized outside of the context of bad faith insurance litigation. The court also stated that *Bashor* agreements are entered into after a valid judgment has been obtained against the defendant, not before trial. The court of appeals then evaluated the stipulated judgment (the court called it the consent judgment) for circumstantial guarantees of trustworthiness. The court concluded that, by initiating an expedited garnishment proceeding rather than litigation against Old Republic, the Rosses were attempting to collect a judgment via "legal maneuvering," without affording Old Republic the right to defend its interests. *Old Republic*, 134 P.3d at 512. The court thus declared that the stipulated judgment and underlying settlement agreement were unenforceable against Old Republic, and that Old Republic could not be liable for postjudgment interest on the unenforceable judgment.

Acting sua sponte, however, the court of appeals held that Old Republic was liable for prejudgment interest, over and above its policy limits, on the portion of coverage that was unpaid until after the federal declaratory judgment. Because the federal court ultimately determined that Old Republic was obligated to pay $1.5 million in additional coverage over its initial $200,000 payment, the court of appeals asserted that this $1.5 million was "wrongfully withheld" during the pendency of the federal action. *Id.* The court of appeals thus held that, pursuant to section 5–12–102, Old Republic owed prejudgment interest on the $1.5 million. Ultimately, the court of appeals remanded the case to the trial court for a determination of the amount of prejudgment interest due.

Both the Rosses and Old Republic petitioned this court for certiorari.[1] The Rosses seek reinstatement of the trial court's order garnishing postjudgment interest, arguing that Old Republic is bound by the settlement agreement and the ensuing stipulated judgment. Old Republic contests the court of appeals' award of prejudgment interest, arguing that the court lost jurisdiction over Old Republic once it reversed the garnishment order of the trial court below. Old Republic further argues that, even if jurisdiction was proper, the court of appeals' holding conflicts with Colorado law governing prejudgment interest in personal injury cases.

## II. Postjudgment Interest

The Rosses ask us to reinstate the trial court's garnishment order for postjudgment interest owed on the stipulated judgment. As stated above, their claim for postjudgment interest is based in part on the supplementary payments provision in Old

1. We granted certiorari on the following four issues:

(1) Whether the court of appeals' ruling, that under section 5–12–102, C.R.S. (2007), a liability insurer must pay a tort plaintiff prejudgment interest beyond policy limits, conflicts with this Court's holding in *Allstate Insurance Co. v. Allen*, 797 P.2d 46 (Colo.1990).

(2) Whether a plaintiff, who fails to obtain an enforceable judgment against a defendant, can then nonetheless compel a defendant's liability insurer to pay prejudgment interest to the plaintiff, pursuant to Section 5–12–102, C.R.S. (2007).

(3) Whether the court of appeals lacks jurisdiction to order an insurer to pay prejudgment interest in an appeal from a garnishment judgment, where the court invalidated the underlying judgment on which the garnishment was based.

(4) Whether the court of appeals' holding that the settlement was not a valid *Bashor* agreement conflicts with the supreme court's decision in *Northland Insurance Company v. Bashor*, 177 Colo. 463, 494 P.2d 1292 (1972).

Republic's CGL policy.[2] Old Republic concedes that the policy obligates it to pay postjudgment interest on a binding judgment, but counters that it cannot be liable for postjudgment interest if there is no valid judgment against it. We agree that Old Republic cannot owe postjudgment interest in the absence of an enforceable judgment, and thus proceed by examining the validity of the stipulated judgment and underlying settlement agreement. Because we conclude that the settlement agreement and stipulated judgment are not enforceable against Old Republic, we affirm the court of appeals' holding that Old Republic owes no postjudgment interest on the stipulated judgment.

The Rosses maintain that the stipulated judgment is enforceable pursuant to this court's decision in *Bashor.* In *Bashor,* we upheld a settlement agreement whereby an insured, following entry of an excess judgment at trial, agreed to pursue claims against its insurance provider and share recovery with the original plaintiff. 177 Colo. at 465, 494 P.2d at 1293. In exchange, the plaintiff agreed to refrain from further efforts to collect on the judgment from the insured's assets. We allowed the insured to proceed with its claims against the insurer, holding that the settlement agreement was not "champertous, illegal, void, or contrary to public policy." *Id.* at 466, 494 P.2d at 1294. Since that case, the term *"Bashor* agreement" has also been used to describe agreements whereby the insured formally assigns its claims against the insurer to the third party plaintiff in exchange for a covenant not to execute on the insured's assets. *See, e.g., Pham v. State Farm Mut. Auto. Ins. Co.,* 70 P.3d 567, 570 (Colo.App.2003); *Pike v. Am. States Preferred Ins. Co.,* 55 P.3d 212, 213 (Colo.App.2002); *Rodriguez v. Safeco Ins. Co.,* 821 P.2d 849 (Colo.App.1991).

Unlike the settlement agreement at hand, which was obtained before trial, the agreement in *Bashor* was formed after the plaintiff had obtained a judgment against the insured in excess of the insured's policy limits. Nonetheless, the Rosses contend that the enforceability of a *Bashor* agreement against an insurer should not turn on whether the agreement was made before or after trial. They maintain that *Bashor* was intended to afford insureds a mechanism for mitigating damages whenever an insurer exposes the insured to a large excess judgment, and thus an insured should not have to wait to protect itself from the risk and cost of continued litigation. In the Rosses' view, *Bashor* agreements are enforceable irrespective of when they are made, so long as they are reasonable under the circumstances and free from fraud and collusion. Thus, the Rosses ask us to extend *Bashor* to validate their pretrial settlement agreement and stipulated judgment.

By contrast, Old Republic argues that *Bashor* cannot be extended to make the settlement agreement at hand a valid enforceable contract, because *Bashor* pertains only to settlement agreements reached after trial. When parties enter into a *Bashor* agreement after a fully contested trial, Old Republic notes, the damages have been determined by a neutral finder of fact. When the settlement occurs before trial, however, the amount of the stipulated judgment is set by agreement between the parties, none of whom has an interest in minimizing the amount. Old Republic argues that because the defendant is protected by the plaintiff's covenant not to execute, the plaintiff can essentially dictate the amount of the judgment. Thus, Old Republic urges us to hold that a pretrial stipulated judgment entered in this fashion lacks circumstantial guarantees of trustworthiness and is therefore not binding on the defendant's insurance carrier.

The enforceability of a pretrial stipulated judgment against a third party insurer was not decided in *Bashor,* and is an issue of first impression for this court. Although the

2. The CGL policy states:
 The company will pay, in addition to the applicable limit of liability:
 ... All costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon....

cases are not precisely on point, our court of appeals has declined to enforce pretrial stipulated judgments as *"Bashor* agreements" on two occasions.[3] *See Serna v. Kingston Enters.,* 72 P.3d 376 (Colo.App.2003) (dismissing claims of negligent employee who sought indemnification from her employer for stipulated judgment entered pursuant to *Bashor-*like agreement between employee and injured plaintiffs); *Miller v. Byrne,* 916 P.2d 566 (Colo.App.1995) (rejecting insureds' claim that measure of damages in breach of contract action against insurer was the amount of a stipulated judgment negotiated by insureds and wrongful death plaintiff). Although *Serna* involves a number of factual distinctions which reduce its relevance to the case at hand,[4] both *Serna* and *Miller* reflect the concern that a pretrial settlement between a plaintiff and an insured defendant "may not actually represent an arm's length determination of the worth of the plaintiff's claim." *Miller,* 916 P.2d at 581 (quoting *Steil v. Fla. Physicians' Ins. Reciprocal,* 448 So.2d 589, 592 (Fla.Dist.Ct.App.1984)); *Serna,* 72 P.3d at 381 (calling pretrial stipulated judgment a "profit-sharing" arrangement).

In agreement with its prior precedent, the court of appeals below held that the Rosses' settlement agreement was not a valid *Bashor* agreement, primarily because it was entered into before trial. *Old Republic,* 134 P.3d at 511. Noting that the only judgment entered against the defendant-insureds was the one to which they stipulated, the court referenced a footnote in *Stone v. Satriana,* in which we defined a *Bashor* agreement as "a settlement reached between opposing parties *after* a judgment has been obtained against the defendant." *See id.* (referencing *Stone,* 41 P.3d 705, 708 n. 2 (Colo.2002)) (emphasis added). The court of appeals then compared the stipulated settlement agreement to the "profit-sharing" agreement struck down in *Serna,* based on the fact that it contemplated the defendant-insureds' sharing damages awarded against Old Republic. *Old Republic,* 134 P.3d at 511. Next, the court stated that *Bashor* agreements are utilized in Colorado only in "bad faith insurance litigation involving allegations of breach of duty to indemnify," and there were no claims for bad faith before the court. *Id.* Finally, the court evaluated the "genuineness" of the stipulated judgment by examining it for circumstantial guarantees of trustworthiness.

We agree with the court of appeals' conclusion that the settlement agreement is not a valid *Bashor* agreement. We find no jurisdiction that would enforce a pretrial stipulated judgment against an insurer who was not a party to the underlying settlement agreement unless the insurer acted in bad faith, denied coverage, or refused to defend the claim on behalf of the insured. We therefore decline to extend *Bashor* to encompass a settlement agreement entered under these circumstances.

The majority rule in states that have considered this issue is that a pretrial stipulated judgment may be enforceable against the defendant's liability insurer if the insurer breaches its contractual obligation to defend the insured. *See, e.g., Hamilton v. Md. Cas. Co.,* 27 Cal.4th 718, 117 Cal.Rptr.2d 318, 41 P.3d 128, 134 (2002) ("The denial of coverage and a defense entitles the policyholder to

---

3. The court of appeals has decided several cases in which the parties had entered into pretrial stipulated judgments, but the enforceability of the stipulated judgments was not at issue. *See, e.g., Pham v. State Farm Mut. Auto. Ins. Co.,* 70 P.3d 567, 570 (Colo.App.2003) (affirming partial summary judgment for insurer that denied plaintiffs uninsured motorist coverage on the basis that plaintiffs stood to recover in another pending suit, filed pursuant to a *Bashor* agreement, which would resolve status of motorist's coverage); *Pike v. Am. States Preferred Ins. Co.,* 55 P.3d 212, 213 (Colo.App.2002) (affirming summary judgment for insurer based on lack of coverage in breach of contract action filed by tort plaintiffs pursuant to *Bashor* agreement with insureds);

*Rodriguez v. Safeco Ins. Co.,* 821 P.2d 849 (Colo. App.1991) (same).

4. *Serna* involved a common law indemnity claim, a cause of action which does not arise until the liability of the party seeking indemnity results in his or her damage. 72 P.3d at 380. The court of appeals held there that because the settlement agreement involved made it highly unlikely that the defendant would ever have to pay the stipulated judgment, and in light of clear indicia of collusion between the plaintiff and defendant whereby the defendant would actually profit from her negligence under the terms of the settlement, the defendant's employer could not be forced to indemnify her. *Id.* at 381.

make a reasonable, noncollusive settlement without the insurer's consent and to seek reimbursement for the settlement amount in an action for breach of the covenant of good faith and fair dealing."); *Black v. Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 681 A.2d 293, 299 (1996) ("An insurer who chooses not to provide its insured with a defense and who is subsequently found to have breached its duty to do so must bear the consequences of its decision, including the payment of any reasonable settlement agreed to by the plaintiffs and the insured."); *S. Guar. Ins. Co. v. Dowse*, 278 Ga. 674, 605 S.E.2d 27, 29 (2004) ("An insurer that denies coverage and refuses to defend an action against its insured ... becomes bound to pay the amount of any settlement within a policy's limits made in good faith...."); *Guillen v. Potomac Ins. Co. of Ill.* 203 Ill.2d 141, 271 Ill.Dec. 350, 785 N.E.2d 1, 13 (2003) (same holding); *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 532–33 (Iowa 1995) (same holding); *Griggs v. Bertram*, 88 N.J. 347, 443 A.2d 163, 175 (1982) (same holding). Under the majority view, when an insurer improperly abandons its insured, the insured is justified in taking steps to limit his or her personal liability. The California Supreme Court's recent opinion in *Hamilton* cogently explains the rationale for this rule:

> In effect, when the insured tenders the suit [against the insurer for failure to defend], the carrier is receiving its chance to be heard. Having rejected the opportunity and waived the chance to contest liability, it cannot reach back for due process to void a deal the insured has entered to eliminate personal liability.

117 Cal.Rptr.2d 318, 41 P.3d at 135 (quoting Chris Wood, Note, *Assignments of Rights and Covenants Not to Execute in Insurance Litigation*, 75 Tex. L.Rev. 1373, 1399 (1997) ).

A number of states have adopted a modification of the majority rule, demonstrating a willingness to enforce pretrial stipulated judgments under various enumerated circumstances. *See, e.g., Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599, 609–10 (Alaska 2003) (holding refusal to defend not necessary; stipulated judgment enforceable where insurer materially breached its contractual obligation to the insured); *Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 645 (Iowa 2000) (holding stipulated judgment enforceable where insurer breached contractual obligation to accept reasonable settlement); *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 934 P.2d 65, 81–82 (1997) (holding stipulated judgment enforceable in case of wrongful coverage denial and refusal to settle within policy limits); *Besel v. Viking Ins. Co.*, 146 Wash.2d 730, 49 P.3d 887, 891 (2002) (holding stipulated judgment enforceable where carrier acts in bad faith); *Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d 1051, 1079 (Wyo.2002) (holding stipulated judgment enforceable where insurer defends under reservation of rights and declines an offer to settle within policy limits). Several states have held that a stipulated judgment can be enforceable if the insurer defends the claim under a reservation of rights. *See, e.g., Safeway Ins. Co. v. Guerrero*, 210 Ariz. 5, 106 P.3d 1020, 1024 (2005); *Patrons Oxford Ins. Co. v. Harris*, 905 A.2d 819, 826–27 (Me.2006); *Miller v. Shugart*, 316 N.W.2d 729, 733 (Minn.1982). In other words, if the insurer offers to defend the claim, but also provides notice that it may decline coverage if the claim is successful, the insured may opt to enter a stipulated judgment rather than go through with the trial. If the coverage dispute is later resolved in the insured's favor, the stipulated judgment may then be enforced against the insurer. In sum, many states broaden the circumstances under which a stipulated judgment may be enforceable, but none of these states has enforced a pretrial stipulated judgment against an insurer where the insurer has conceded coverage and defended its insured, and where there has been no finding of bad faith against the insurer.

 Upon our review of the prevailing case law, we decline to hold that pretrial stipulated judgments are per se unenforceable under *Bashor*. There may be circumstances where a stipulated judgment is a defendant-insured's only viable recourse against an insurer that has acted in bad faith. As the Supreme Court of Alaska stated, "An insured that has been placed at economic risk by its insurer's breach should be allowed to protect itself by shifting the risk to the

breaching insurer without first subjecting itself to potential financial ruin." *Great Divide,* 79 P.3d at 609.

We acknowledge the risk of fraud and collusion between the plaintiff and the defendant-insured when the only judgment ever obtained against the defendant is stipulated, and the existence and amount of the defendant's liability is determined by the parties rather than by a neutral factfinder. Where an insurer has fulfilled its contractual obligation to the insured in good faith, the risk of enforcing a collusive settlement is not justified. Where an insurer has wrongfully subjected its insured to an excess judgment, however, the risk of collusion may be tolerable in light of the "relative positions of the parties." Justin A. Harris, Note, *Judicial Approaches to Stipulated Judgments, Assignments of Rights, and Covenants Not to Execute in Insurance Litigation,* 47 Drake L.Rev. 853, 875 (1999). Furthermore, where an insurer has been found in breach of contract or in breach of its duty to act in good faith, the risk of collusion is balanced by the fact that the insured has had to tender claims against the insurer. The stipulated judgment thus is not binding on the insurer until after an adversarial proceeding before a neutral factfinder, providing the insurer with an opportunity to advance its defense.

■ In the case at hand, Old Republic conceded coverage and defended its insured, disputing only the extent of its liability under the applicable policies. No court has found Old Republic in breach of its contract with the defendant-insureds, nor are there any pending claims against Old Republic for breach of contract or bad faith. Although the Rosses repeatedly allege that Old Republic committed bad faith by failing to settle within policy limits when it refused the $800,000 settlement offer, the Rosses have no standing to make this claim. The insurer's "duty of good faith and fair dealing extends only to the insured, not to the third-party." *Goodson v. Am. Std. Ins. Co.,* 89 P.3d 409, 414 (Colo.2004). Furthermore, during the

federal declaratory action, the defendant-insureds dismissed their claims against Old Republic with prejudice.

Under the rule we adopt today, the stipulated judgment would have been enforceable pursuant to a valid pretrial *Bashor* agreement if the defendant-insureds had proceeded successfully with any of their claims against Old Republic,[5] or if the settlement agreement had provided for the assignment of claims against Old Republic to the Rosses and the Rosses had successfully litigated those claims. Instead, the defendant-insureds dismissed their claims with prejudice and left the Rosses without standing to assert claims against Old Republic. We agree with the court of appeals that the Rosses cannot wait until they are out of options, then initiate an expedited garnishment proceeding to accomplish by "indirection that which could not be done directly." *Old Republic,* 134 P.3d at 512.

We conclude that under the facts of this case, where the insurer has conceded coverage and defended its insured, and where there has been no finding of bad faith against the insurer, a stipulated judgment entered before trial, to which the insurer is not a party, cannot be enforced against the insurer. Because we affirm the court of appeals' conclusion that the stipulated judgment is unenforceable, the trial court's garnishment order for postjudgment interest on that unenforceable judgment cannot stand.

Having held that the stipulated judgment is unenforceable on these facts, we decline to adopt the remainder of the court of appeals' reasoning concerning the stipulated judgment. As stated above, the fact that the settlement agreement was entered into before trial does not make it per se invalid. Furthermore, we disagree that the settlement agreement was the type of profit-making arrangement struck down in *Serna.* Under the terms of the Rosses' agreement, any recovery the defendant-insureds made on their claims against Old Republic was to be distributed to the Rosses to the full extent of

**5.** The defendant-insureds' counterclaims in the federal proceeding alleged causes of action against Old Republic for breach of contract, willful and wanton breach of contract, negligence, breach of covenant of good faith and fair dealing, and breach of fiduciary duty. *Old Republic,* 283 F.3d at 1223–24.

the stipulated judgment, plus interest. Any compensatory damages above the amount of the stipulated judgment plus one-half of any punitive damages award would be paid to the defendant-insureds. However, considering that such damages would be awarded only if the factfinder adjudged that the insureds actually suffered damages due to Old Republic's bad faith conduct, or if the factfinder determined that Old Republic deserved to be punished for its conduct *towards its insureds*, it cannot be characterized as an unfair profit if the insureds were entitled to share those damages. By contrast, in *Serna*, the settlement agreement provided that the defendant would share in the proceeds of the stipulated judgment itself, meaning the defendant would receive a portion of the damages flowing from the defendant's own negligence. 72 P.3d at 378. Finally, although a *Bashor* agreement must normally be examined for evidence of fraud or collusion, because we hold that the stipulated judgment is unenforceable on its face, we need not review the court of appeals' inquiry into the reasonableness of the underlying settlement agreement.

## III. Prejudgment Interest

We now turn to the court of appeals' sua sponte award of prejudgment interest in excess of Old Republic's policy limits. In awarding prejudgment interest, the court of appeals relied on section 5–12–102, which states, "When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment...." The court asserted that Old Republic "wrongfully withheld" policy coverage during the pendency of the declaratory action, and thus was liable for prejudgment interest under section 5–12–102. The court acknowledged that Old Republic may have filed the declaratory judgment with the good faith belief that its obligation had been fulfilled with the initial $200,000 payment. Ultimately, however, the court concluded that Old Republic was nonetheless liable for interest on all policy proceeds for which it was eventually held responsible. We hold that

Old Republic's obligation was discharged when it paid policy limits, and therefore reverse the court of appeals' award of prejudgment interest.

### A. Jurisdiction

Before we analyze the court of appeals' legal basis for awarding prejudgment interest, we must first examine whether the court had jurisdiction to issue the order in question. Old Republic emphasizes that the sole mechanism by which it was brought before the trial court was a garnishment proceeding, based on the stipulated judgment. Old Republic argues that once the court of appeals held that the stipulated judgment was not binding, a holding we affirm, the court lost jurisdiction to issue any garnishment order against it. Old Republic relies on *Zurich Insurance Co. v. Bonebrake*, in which this court held that "[t]he existence of a valid judgment is a jurisdictional prerequisite to garnishment relief." 137 Colo. 37, 39, 320 P.2d 975, 976 (1958).

Acknowledging the absence of a binding judgment, the court of appeals stated, "Wrongful withholding [under section 5–12–102] only requires failure to pay or deliver money *when obligated to do so.*" *Old Republic*, 134 P.3d at 512 (citing *Peterman v. State Farm Mut. Auto. Ins. Co.*, 8 P.3d 549, 551 (Colo.App.2000)) (emphasis added). However, except to suggest that Old Republic "agreed to indemnify defendants to the extent of the determined coverage," the court of appeals did not identify the source of Old Republic's obligation to pay, nor did the court specify when the wrongful withholding began. *See id.* Old Republic asserts that it has never been under any obligation to pay the $1.5 million balance of coverage. Although the federal declaratory judgment determined that the maximum amount of coverage under the insurance policies was $1.7 million, Old Republic argues that there was never any judgment against the defendant-insureds or Old Republic to pay that amount. Rather, Old Republic claims that its payment of policy limits immediately following the declaratory judgment was voluntary.

Because the court of appeals lacks jurisdiction to order prejudgment interest unless the court has before it some breach of an obligation to pay, we now examine possible sources for the obligation implicitly recognized by the court of appeals. The insurance policies themselves cannot be the source of the obligation in question, as the policies only require Old Republic to pay the legal obligations of its insureds-that is, the obligations encompassed in the stipulated judgment to which Old Republic is not bound. Furthermore, the court of appeals did not treat the federal declaratory judgment as the source of the obligation. Thus, we rely on the court of appeals' statement that Old Republic "agreed to indemnify" the defendant-insureds to conclude that the court identified a new contractual obligation—outside the confines of the insurance contract—which bound Old Republic to pay policy limits.

In a portion of its opinion separate from its analysis of prejudgment interest, the court of appeals examined a letter written by Old Republic's counsel. This letter came before the court because the Rosses argued that it evidenced Old Republic's consent to the settlement agreement and ensuing stipulated judgment.[6] Although the court rejected the Rosses' argument that the letter bound Old Republic to the stipulated judgment, the court, without elaboration, found that the letter "show[ed] that Old Republic agreed to pay plaintiffs under the insurance policy if the parties entered into a settlement agreement." 134 P.3d at 512. The court of appeals thus treated the letter as a new contract obligating Old Republic to pay policy limits to the Rosses upon their entry of a settlement. Under this construction, the letter obligated Old Republic to pay policy limits more than three years before the federal declaratory judgment was finalized. We conclude that the court of appeals relied on this letter when it determined that Old Republic breached an obligation to pay policy limits.

The court of appeals' reliance on the letter may have been misplaced. The letter is arguably no more than a unilateral assurance by Old Republic to its insureds that Old Republic would continue to honor its existing obligations under the policies. Furthermore, even if the letter did create a new contract between Old Republic and its insureds, the Rosses are not parties to the new contract. However, we decline to further address the jurisdiction question. Rather, we conclude that, even if there was a proper jurisdictional basis for the court of appeals' award of prejudgment interest, the court's award of interest in excess of policy limits was not legally justified. As we will show below, Old Republic's obligation to the defendant-insureds was satisfied by the payment of policy limits, and the award of prejudgment interest exceeding those limits was improper.

## B. Prejudgment Interest Is Subject to Policy Limits in Personal Injury Cases

■ We hold that the court of appeals erred in its application of section 5–12–102, which governs the award of prejudgment interest in non-personal-injury cases only. *See Farmers Reservoir & Irrigation Co. v. City of Golden*, 113 P.3d 119, 133 (Colo.2005). By contrast, section 13–21–101, C.R.S. (2007), provides for the award of prejudgment interest in personal injury cases.[7] By treating this case like a breach of contract case subject to section 5–12–102, the court of appeals circumvented Colorado caselaw dictating that all damages arising from personal injuries, including prejudgment interest, are subject to relevant limits on damages in a defendant's insurance policy. *See, e.g., Allstate Ins. Co. v. Allen*, 797 P.2d 46, 48 (Colo.1990);

---

6. The letter, which was written to assuage the insureds' concern that entry of the stipulated settlement might constitute a breach of their insurance contract, stated:

> On behalf of Old Republic, we can assure you and your clients that, if your clients wish to resolve the litigation as you suggested, Old Republic has no objection to that and will agree to indemnify your insureds, but only to

the extent of the determined insurance coverage.

*Ross v. Old Republic Ins. Co.*, 134 P.3d at 505, 508 (Colo.App.2006).

7. Section 13–21–101 dictates that a party bringing a tort action seeking damages for personal injuries may claim interest on the damages alleged from the date the action accrued until satisfaction of the judgment.

*Allstate Ins. Co. v. Starke,* 797 P.2d 14, 18–19 (Colo.1990).

Prejudgment interest in a personal injury case is an element of compensatory damages, "awarded to compensate the plaintiff for the time value of the award eventually obtained against the tortfeasor." *Starke,* 797 P.2d at 19. As an element of compensatory damages, prejudgment interest is subject to relevant coverage limits in the defendant's insurance policy. *Id.* For example, in *Starke,* prejudgment interest was awarded as an element of compensatory damages in a wrongful death suit. *Id.* at 21. We held that the defendant's liability insurer was obligated to pay the interest, but only to the extent of the defendant's coverage for damages arising from personal injury. *Id.*

By contrast, in a breach of contract action against an insurer, an award of prejudgment interest would not fall within the liability damage clause of the insured's policy. The policy contractually limits the insurer's obligation to shield the insured from liability to third persons, but the insurer cannot use that contract to shield itself from liability for its own wrongdoing. *Peterman v. State Farm Mutual Auto. Insurance Co.,* 8 P.3d 549, is an illustrative case. There, the insureds brought a breach of contract and bad faith action against the insurer after it refused to pay out an uninsured motorist policy. *Id.* at 550. After the insureds obtained a judgment against the insurer, the court of appeals appropriately awarded prejudgment interest in excess of policy limits. *Id.* at 552. The court held that the prejudgment interest damages arose not from the insured's car accident, but from the insurer's breach of an obligation to pay. The terms of the uninsured motorist policy could not limit the insurer's liability for its own wrongdoing. *Id.*

The court of appeals treated the case at hand as one involving a breach of contract, subject to *Peterman.* However, as stated above, the defendant-insureds dismissed all breach of contract claims against Old Republic several years ago. The Rosses, who are not in privity of contract with Old Republic, initiated the proceedings at hand, and the Rosses' intention was to recover damages arising from the airplane accident. In this context, a claim to prejudgment interest, allegedly accruing on the stipulated judgment against the defendant-insureds, is a claim for additional compensatory damages. We reiterate our holding in *Allen* and *Starke* that when the insurer is merely indemnifying a judgment against the insured, the insurer cannot be compelled to pay more than policy limits. *Allen,* 797 P.2d at 48; *Starke,* 797 P.2d at 18–19. Therefore, we hold that Old Republic's obligation was discharged when it paid policy limits.

## IV. Conclusion

In sum, we hold that under the facts of this case, where the insurer has conceded coverage and defended its insured, and where there has been no finding of bad faith against the insurer, the insurer cannot be bound by a pretrial settlement agreement and stipulated judgment to which it was not a party. Because the stipulated judgment is unenforceable, Old Republic cannot be liable for postjudgment interest on the judgment. Furthermore, because prejudgment interest is subject to policy limits in personal injury cases, we reverse the court of appeals' award of prejudgment interest.