[No. D057887. Fourth Dist., Div. One. Mar. 13, 2012.]

DONALD DEWITT, Plaintiff and Appellant, v.
MONTEREY INSURANCE COMPANY et al., Defendants and
Respondents.

## Counsel

Herronlaw, Matthew V. Herron and Courtney L. Gregory for Plaintiff and Appellant.

Grant, Genovese & Baratta, James M. Baratta, Lance D. Orloff and Ryan Z. Keller for Defendants and Respondents.

## OPINION

### AARON, J.—

## I.

## INTRODUCTION

A liability insurer's duty to defend its insured against third party claims applies to claims that are potentially within the scope of the insured's policy. The insurer's duty to indemnify applies only to claims that are covered by the policy. (*Risely v. Interinsurance Exchange of the Automobile Club* (2010) 183 Cal.App.4th 196, 207–208 [107 Cal.Rptr.3d 343].) "From the covenant of good faith and fair dealing implied by law in all contracts, and from [a] liability insurer's duty to defend and indemnify covered claims, California courts have derived an implied duty on the part of [an] insurer to accept reasonable settlement demands on such claims within the policy limits." (*Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718, 724 [117 Cal.Rptr.2d 318, 41 P.3d 128] (*Hamilton*).) Case law has established that an "insurer has a duty to accept a reasonable settlement offer only with respect to a *covered* claim" (i.e., a claim for which the insurer owes the insured a duty of indemnity). (*Marie Y. v. General Star Indemnity Co.* (2003) 110 Cal.App.4th 928, 958 [2 Cal.Rptr.3d 135] (*Marie Y.*).) The failure of a liability insurer to perform its implied duty to accept a reasonable settlement offer of a covered claim gives rise to a claim for the insured against the insurer for breach of the covenant of good faith and fair dealing, or a "bad faith" claim, based on the insurer's refusal to settle the third party claim.

In this appeal, we conclude that the trial court did not err in denying plaintiff Donald DeWitt's request to instruct the jury pursuant to the standard jury instruction that sets forth the elements of a bad faith claim based on a refusal to settle (CACI No. 2334). We reach this conclusion because DeWitt neither established as a matter of law, nor requested that the jury in this case determine, that defendants Monterey Insurance Company and California Capital Insurance Company (collectively respondents)[1] owed DeWitt a duty of indemnity with respect to claims brought against him in a prior action.[2]

---

[1] The cover page of the insurance policy in this case contains the names of both Monterey Insurance Company and California Capital Insurance Company (as well as the names of two other insurers). The parties do not ascribe any distinction between Monterey Insurance Company and California Capital Insurance Company in their briefing on appeal. For purposes of clarity, we refer to both entities collectively as "respondents" throughout this opinion.

[2] Respondents also contend that any error committed by the trial court in failing to instruct the jury pursuant to CACI No. 2334 was harmless. In light of our conclusion that the trial court did not err in refusing to instruct the jury pursuant to CACI No. 2334, we need not consider this contention.

Accordingly, we affirm the judgment and the trial court's order denying DeWitt's motion for new trial.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  *The underlying action*[3]

In December 2001, Lisa Cappelletti owned an apartment complex in San Diego. On December 31, 2001, a New Year's Eve party was held at Cappelletti's apartment complex. Erica Howard, who was 15 years old at the time, got a ride to the party with Paul Peterson, who was also a minor. Peterson became intoxicated at the party. After they left the party, Peterson lost control of his car and it rolled over several times. Howard suffered severe permanent injuries as a result of the accident.

At the time of the accident, Cappelletti was insured against personal injury and property damage claims under a business owner policy issued by respondents (Cappelletti's Policy). Cappelletti's Policy had a liability limit of $1 million per occurrence. In addition to naming Cappelletti as an insured, Cappelletti's Policy provided in relevant part:

"2. Each of the following is also an insured:

"a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you. . . . [¶] . . . [¶]

"b. Any person (other than your employee), or any organization while acting as your real estate manager."

In April 2002, Howard filed an action against Peterson and his parents, Cappelletti, Ron Hammett and Ron Hammett Properties (together Hammett), the apartment complex's property manager, and DeWitt (Howard Action). With respect to DeWitt, Howard alleged that DeWitt lived at the apartment complex and was the "onsite property manager"; that he was the agent or employee of Cappelletti or Hammett; that he had been "present during the party [and] facilitated and promoted the party by charging admission"; and that he had purchased alcohol and furnished it to minors at the party, including Peterson, who became "obviously intoxicated." The complaint also

---

[3] Our summary of this litigation is drawn in part from this court's prior opinion in that matter. (*Howard v. DeWitt* (July 15, 2009, D052637) [nonpub. opn.].)

alleged that both Cappelletti and Hammett breached their duties of care by "hiring [DeWitt] as an onsite manager [and] not monitoring [his] conduct as an onsite manager."

Cappelletti and Hammett provided a copy of the complaint to respondents, which accepted their defense. After conducting an investigation as to whether DeWitt was an insured under Cappelletti's Policy, respondents concluded that DeWitt was not in fact an insured, and declined to provide him with a defense.

In January 2004, the court approved a good faith settlement pursuant to which Howard accepted Peterson's $250,000 insurance policy limit in settlement of Howard's claims against him.[4]

In November 2006, Howard filed a request for entry of default against DeWitt. Shortly thereafter, the trial court entered a default against DeWitt. In December 2006, the court held a prove-up hearing and entered a default judgment for Howard against DeWitt in the amount of $4,697,318.

In March 2007, Howard's counsel sent a letter to respondents demanding the $1 million policy limit contained in Cappelletti's Policy, for settlement of Howard's claims against Cappelletti, Hammett and DeWitt. The letter asserted that respondents had breached their duty to defend DeWitt, that the breach had resulted in the entry of a default judgment against DeWitt, and that respondents' failure to settle for policy limits would expose respondents to excess liability for the entire judgment. Respondents did not accept the settlement demand.

In April 2007, Cappelletti and Hammett served Howard with an offer to compromise the claims against them for a total of $50,000. Howard accepted the offer, and Cappelletti and Hammett were dismissed from the action in June 2007.

In May 2007, respondents moved for an order setting aside the default and default judgment against DeWitt and granting respondents leave to file a complaint in intervention. In January 2008, the trial court denied the motion. Respondents filed an appeal of the order denying the motion to set aside, and in July 2009, this court affirmed the trial court's order.

In August 2009, respondents paid $3.5 million to Howard in satisfaction of the default judgment against DeWitt. Howard subsequently filed a satisfaction of judgment indicating that the default judgment against DeWitt had been satisfied in full.

---

[4] The court had previously dismissed Peterson's parents from the case.

B. *DeWitt's action against respondents*

DeWitt filed this action against respondents in March 2008. DeWitt's complaint contained two causes of action—breach of contract and breach of the covenant of good faith and fair dealing (bad faith claim). In the breach of contract cause of action, DeWitt alleged, "As a result of [respondents'] refusal to defend and indemnify DeWitt, a default was entered against him on November 11, 2006 and a default judgment was entered against him in the amount of $4,697,318.00 on December 20, 2006." In the bad faith cause of action, DeWitt alleged that respondents had "tortiously breached the implied covenant of good faith and fair dealing by failing to defend and indemnify DeWitt from claims asserted in the Howard Action despite their knowledge that DeWitt was covered or potentially covered under [Cappelletti's Policy]."

In September 2008, DeWitt filed a motion for summary adjudication on the issue of whether respondents had breached their duty to defend him in the Howard Action.

In September 2009, the trial court granted DeWitt's motion for summary adjudication. In its order, the trial court stated, "The court finds [respondents] owed DeWitt a duty to defend and breached its duty to defend in [the Howard Action.]" The court reasoned that the duty to defend is triggered by the potential for coverage under an insurance policy and that "during the pendency of the [Howard Action], there was a possibility of coverage for DeWitt under [Cappelletti's Policy]."

Respondents filed a motion for summary adjudication as to DeWitt's bad faith claim and his claim for punitive damages. The trial court denied the motion as to DeWitt's bad faith claim, but granted the motion as to DeWitt's claim for punitive damages. With respect to DeWitt's bad faith claim, the trial court reasoned in part, "[T]here are triable issues of material fact as to whether [respondents'] refusal to defend, settle, or pay policy benefits on behalf of DeWitt was reasonable."

The trial court conducted a jury trial on DeWitt's claims in March and April 2010. At trial, DeWitt presented evidence in support of various theories by which he contended that respondents had breached the covenant of good faith and fair dealing in the Howard Action, including unreasonably refusing to defend him, failing to accept reasonable settlement offers, and failing to timely pay policy benefits.[5]

As discussed in greater detail in part III., *post*, during a conference on jury instructions, DeWitt's counsel requested that the trial court instruct the jury

---

[5] DeWitt's counsel abandoned his breach of contract claim during a discussion of jury instructions.

pursuant to CACI No. 2334 concerning an insurer's duty to accept reasonable settlement offers. The trial court denied the request. The jury returned a special verdict finding that respondents had not unreasonably failed to defend DeWitt in the Howard Action.[6] The trial court entered judgment in favor of respondents on the jury verdict.

DeWitt filed a motion for new trial in which he claimed that the trial court had erred in denying his request to instruct the jury pursuant to CACI No. 2334. The trial court denied the motion. DeWitt timely appealed from the judgment and the order denying his motion for new trial.

## III.

## DISCUSSION

*The trial court properly refused to instruct the jury pursuant to CACI No. 2334*

DeWitt claims that the trial court erred in refusing his request to instruct the jury pursuant to CACI No. 2334.[7]

### A. *Governing law and standard of review*

#### 1. *General principles of law governing jury instructions*

■ " 'A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence.' [Citation.] . . . ' " " 'A reviewing court must review the evidence [in the light] most favorable to the contention that the requested instruction is applicable since the parties are entitled to an instruction thereon if the evidence so viewed could establish the elements of the theory presented. . . .' [Citation.]" ' [Citation.]" (*Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1539–1540 [111 Cal.Rptr.3d 36].)

---

[6] As noted above, the trial court granted DeWitt's motion for summary adjudication and found that respondents had breached their duty to defend DeWitt in the Howard Action. The trial of DeWitt's bad faith failure to defend claim centered on whether respondents had *unreasonably* failed to defend DeWitt. (See *Advanced Network, Inc. v. Peerless Ins. Co.* (2010) 190 Cal.App.4th 1054, 1061 [119 Cal.Rptr.3d 17] [" 'Breach of an insurer's duty to defend violates a contractual obligation and, *where unreasonable*, also violates the covenant of good faith and fair dealing, for which tort remedies are appropriate. [Citation.]' " (italics added)].)

[7] DeWitt also contends, "If this Court reverses and remands for further proceedings on the issue of [r]espondents' liability under CACI 2334, the Court should also reverse the trial court's grant of [r]espondents' motion for summary adjudication as to punitive damages with respect to this theory of liability." We need not consider this claim in light of our conclusion that the trial court did not err in refusing to instruct the jury pursuant to CACI No. 2334.

2. *The law governing bad faith claims based on an insurer's failure to accept a reasonable settlement offer*

    a. *Case law*

In *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198] (*Comunale*), the California Supreme Court first recognized a cause of action for bad faith based on an insurer's refusal to accept a reasonable settlement demand. In *Comunale*, an individual named Percy Sloan struck two pedestrians (the Comunales) with his truck. (*Id.* at p. 657.) Sloan was insured by Traders & General Insurance Company (Traders) under a policy with limits of liability in the amount of $10,000 for each person injured and $20,000 for each accident. (*Ibid.*) When the Comunales filed suit against Sloan, Traders refused to assume Sloan's defense. Traders also rejected the Comunales' offer to settle their claims for $4,000 on the ground that the accident did not fall within the scope of the policy's coverage. (*Ibid.*) The Comunales' action proceeded to trial and resulted in a judgment of $26,250 against Sloan. (*Ibid.*)

In a subsequent action brought by the Comunales against Traders, the trial court determined that the policy did in fact cover the accident. The Comunales recovered the amount of the judgment that was within Sloan's policy limits. (*Comunale, supra,* 50 Cal.2d at pp. 657–658.) Sloan then assigned his rights against Traders to Anthony Comunale, who sued Traders to recover the portion of the judgment that was in excess of the policy limits. (*Id.* at p. 658.) The Supreme Court held that Traders had breached the implied covenant of good faith and fair dealing that it owed to Sloan when it failed to accept the Comunales' settlement offer. In reaching this conclusion, the *Comunale* court reasoned in part: "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. [Citation.] This principle is applicable to policies of insurance. (*Hilker* v. *Western Automobile Ins. Co.,* 204 Wis. 1 [231 N.W. 257, 258] (aff'd on rehg., 204 Wis. 1 [235 N.W. 413]).) In the Hilker case it is pointed out that the rights of the insured 'go deeper than the mere surface of the contract written for him by the defendant' and that implied obligations are imposed 'based upon those principles of fair dealing which enter into every contract.' (231 N.W. at page 258.) It is common knowledge that a large percentage of the claims covered by insurance are settled without litigation and that this is one of the usual methods by which the insured receives protection. [Citations.] Under these circumstances the implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case although the express terms of the policy do not impose such a duty." (*Comunale, supra,* at pp. 658–659.)

The *Comunale* court specifically held that an insurer may be liable for failure to accept a reasonable settlement offer in a case in which the insurer has refused to defend the action and coverage is later determined to exist:

"Most of the cases dealing with the insurer's failure to settle involve an insurer who had assumed the defense of the action against the insured. It is generally held that since the insurer has reserved control over the litigation and settlement it is liable for the entire amount of a judgment against the insured, including any portion in excess of the policy limits, if in the exercise of such control it is guilty of bad faith in refusing a settlement. [Citations.] Those cases are, of course, factually distinguishable from the present one since Traders never assumed control over the defense. However, the reason Traders was not in control of the litigation is that it wrongfully refused to defend Sloan, and the breach of its express obligation to defend did not release it from its implied duty to consider Sloan's interest in the settlement.[8]

"We do not agree with the cases that hold there is no liability in excess of the policy limits where the insurer, believing there is no coverage, wrongfully refuses to defend and without justification refuses to settle the claim. [Citations.] An insurer who denies coverage *does so at its own risk*, and, although its position may not have been entirely groundless, *if the denial is found to be wrongful* it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract." (*Comunale, supra,* 50 Cal.2d at p. 660, italics added.)

In *Johansen v. California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9 [123 Cal.Rptr. 288, 538 P.2d 744] (*Johansen*), the Supreme Court held that an insurer that had assumed the defense of its insureds, but failed to accept a reasonable settlement offer within policy limits, could be liable for its bad faith refusal to settle. The insurer in *Johansen* defended a third party's action against its insureds for damages arising out of an automobile accident, but reserved its right to litigate the issue of whether the accident was covered under the insureds' policy. (*Id.* at p. 13.) In the course of providing a defense, the insurer refused the third party's settlement offer that was within the policy limits on the ground that it did not believe the accident was covered under the policy. (*Ibid.*) The third party recovered a judgment against the insureds that was in excess of the policy limits. (*Ibid.*)

"In a subsequent declaratory judgment action . . . the Court of Appeal determined that [the insurer's] policy did in fact cover the accident."

---

[8] Where there is no coverage under the policy, courts have clarified that there is no potential liability for failing to accept a settlement offer even where an insurer breaches the duty to defend. (E.g., *Marie Y., supra,* 110 Cal.App.4th at pp. 958–959.)

(*Johansen, supra*, 15 Cal.3d at p. 12.) The third party subsequently brought a lawsuit (as the insureds' assignee) against the insurer for bad faith refusal to accept the third party's settlement offer in the underlying litigation. (*Id.* at pp. 13–14.) The trial court ruled in favor of the insurer on the ground that the insurer had a bona fide belief that coverage did not exist. (*Id.* at pp. 14–15.)

■ The *Johansen* court reversed, concluding that an insurer's bona fide belief that coverage does not exist is not a valid basis for refusing to accept a settlement offer. (*Johansen, supra*, 15 Cal.3d at pp. 15–16.) Quoting *Comunale, supra*, 50 Cal.2d at page 660, the *Johansen* court stated, " 'An insurer who denies coverage *does so at its own risk and although its position may not have been entirely groundless*, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract.' " (*Johansen, supra*, at p. 15, italics added by *Johansen*.) The *Johansen* court further clarified that "a 'wrongful' denial of coverage as used in *Comunale* means merely an erroneous denial of coverage required by the policy." (*Id.* at p. 16, fn. 4.)

The *Johansen* court also made clear that if the insurer had been *correct* that coverage did *not* exist, the insurer could not be held liable for bad faith refusal to settle: "[W]e cannot accept [the insurer's] complaint that the *Comunale* rule requires an insurer to settle in all cases irrespective of whether the policy provides coverage. *Clearly, if [the insurer's] belief that the policy did not provide coverage in the instant case had been vindicated, it would not be liable for damages flowing from its refusal to settle*; all that *Comunale* establishes is that an insurer who fails to settle does so 'at its own risk.' Moreover, contrary to defendant's assertion, an insurer in defendant's position retains the ability to enter an agreement with the insured reserving its right to assert a defense of noncoverage even if it accepts a settlement offer. If, having reserved such rights and having accepted a reasonable offer, the insurer subsequently establishes the noncoverage of its policy, it would be free to seek reimbursement of the settlement payment from its insured." (*Johansen, supra*, 15 Cal.3d at p. 19, italics added; see also *id.* at p. 18 [distinguishing *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.* (1970) 9 Cal.App.3d 508 [88 Cal.Rptr. 246] on the ground that "the insurer State Farm *was not under a duty to settle since its policy did not actually provide for coverage*" (italics added)].)

In *Marie Y., supra*, 110 Cal.App.4th 928, a trial court ruled that an insurer's "refusal to defend and to accept reasonable settlement offers" rendered it liable for a third party's excess judgment against an insured. (*Id.* at p. 946.) On appeal, the Court of Appeal concluded that although the insurer *had* breached its duty to defend the insured against claims asserted in the

third party's amended complaint (*id.* at p. 960), the insurer had *not* breached its duty to indemnify the insured because there was no actual coverage for the claims (*id.* at p. 958). The *Marie Y.* court concluded that in the absence of actual coverage,[9] the insurer could not be liable for failing to accept the third party's settlement offer:

"[The insurer] . . . never had a duty to indemnify [the insured].

■ "It follows that [the insurer] never had an obligation to accept any of [the third party's] offers to settle. . . . [T]he insurer has a duty to accept a reasonable settlement offer only with respect to a *covered* claim. It is true that an insurer who refused a reasonable settlement offer, on the ground of no coverage, does so at its own risk, so that the insurer has no defense that its refusal was in good faith if coverage is, in fact, found. ([*Johansen, supra,* 15 Cal.3d at pp. 16, 19].) However, where the *kind* of claim asserted is not covered by the insurance contract (and not simply the *amount* of the claim), an insurer has no obligation to pay money in settlement of a noncovered claim, because 'The insurer does not . . . insure the entire range of an insured's well-being, outside the scope of and unrelated to the insurance policy, with respect to paying third party claims. It is an insurer, not a guardian angel.' (*Camelot by the Bay Condominium Owners' Assn. v. Scottsdale Ins. Co.* (1994) 27 Cal.App.4th 33, 52 [32 Cal.Rptr.2d 354].) Here, because there was no coverage for the *kind* of claims asserted by [the third party,] [the insurer] had no obligation to accept any of [the third party's] offers to settle those claims. (*Id.* at p. 53.) Therefore, to the extent the trial court, in its summary adjudication order, ruled that [the insurer's] refusal to accept [the third party's] settlement offers rendered [the insurer] liable for the entire judgment against [the insured], the trial court erred." (*Marie Y., supra,* 110 Cal.App.4th at pp. 958–959.) (See also *Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 465, fn. 15 [64 Cal.Rptr.3d 632] ["[The *Comunale* rule] imposes no unfair burden upon an insurer that may, in all good faith, believe that its policy provides no coverage for the claim. *If the insurer rejects a settlement offer on that ground, and its coverage position is later vindicated, it will have no liability for the damages flowing from such refusal.*" (italics added)]; accord, *Samson v. Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 237 [178 Cal.Rptr. 343, 636 P.2d 32] (*Samson*) ["If an insurer honestly believes that its policy does not provide coverage and, therefore, chooses to reject a reasonable settlement offer, it must bear the responsibility *if coverage is found.*" (italics added)]; Croskey

---

[9] The *Marie Y.* court made clear that a *covered* claim is one for which the insurer owes its insured a duty to *indemnify*. (*Marie Y., supra,* 110 Cal.App.4th at p. 950 ["The duty to defend exists if there is any potential for coverage under the policy, while the duty to indemnify exists only if the insured's conduct is actually covered."]; see also *id.* at p. 959 [indicating that "coverage" is synonymous with "indemnity"].)

et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2011) ¶ 12:674, p. 12B-110.4 (rev. # 1, 2011) (hereafter Insurance Litigation) [noting that an insurer's "erroneous refusal to defend coupled with its 'unreasonable' refusal to settle within policy limits" (italics omitted) may render the insurer liable for an excess judgment against its insured *"once coverage is established"* (*ibid.*)].)

### b. *CACI No. 2334*

CACI No. 2334, the instruction that DeWitt claims the court erroneously refused to give, states:

"[*Name of plaintiff*] claims that [he/she/it] was harmed by [*name of defendant*]'s breach of the obligation of good faith and fair dealing because [*name of defendant*] failed to accept a reasonable settlement demand in a lawsuit against [*name of plaintiff*]. To establish this claim, [*name of plaintiff*] must prove all of the following:

"1. That [*name of plaintiff in underlying case*] brought a lawsuit against [*name of plaintiff*] for a claim that [[he/she/it] alleged] was covered by [*name of defendant*]'s insurance policy;

"2. That [*name of defendant*] failed to accept a reasonable settlement demand for an amount within policy limits; and

"3. That a monetary judgment was entered against [*name of plaintiff*] for a sum greater than the policy limits.

" 'Policy limits' means the highest amount available under the policy for the claim against [*name of plaintiff*].

"A settlement demand is reasonable if [*name of defendant*] knew or should have known at the time the settlement demand was rejected that the potential judgment was likely to exceed the amount of the settlement demand based on [*name of plaintiff in underlying case*]'s injuries or loss and [*name of plaintiff*]'s probable liability."

The Directions for Use for CACI No. 2334 state in relevant part, "This instruction is intended for use if the insurer assumed the duty to defend the insured, but failed to accept a reasonable settlement offer."

### c. *A liability insurer's right to contest coverage and the duty to defend*

"In the ordinary case, an insurer who provides counsel for its insured and defends the action waives its right to assert coverage defenses unless it

provides for an adequate reservation of its rights. [Citation.]" (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 223 [39 Cal.Rptr.3d 33]; accord, Insurance Litigation, *supra*, ¶ 7:504, p. 7B-4 (rev. # 1, 2011) ["Unconditional defense of an action (as opposed to defense 'under reservation of rights') forfeits any ground to challenge coverage."].)

■ In contrast, an insurer who breaches the duty to defend may contest coverage in a subsequent action "where the issues upon which coverage depends are not raised or necessarily adjudicated in the underlying action." (*Pruyn v. Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500, 514, fn. 15 [42 Cal.Rptr.2d 295].) Where coverage was not necessarily adjudicated in the underlying action, "the insurer is free to litigate those issues in [a] subsequent action and present any defenses not inconsistent with the judgment against its insured." (*Ibid.*, citing *Hogan v. Midland National Ins. Co.* (1970) 3 Cal.3d 553, 564–565 [91 Cal.Rptr. 153, 476 P.2d 825] (*Hogan*) [rejecting claim that insurer who wrongfully refused to defend insured "cannot in a subsequent action assert the defense of noncoverage"]; accord, Insurance Litigation, *supra*, ¶ 12:666, p. 12B-110.2 (rev. # 1, 2011) ["The fact the insurer refused to defend the original action is no bar to raising its coverage defense in [a] later action."].)

## B.   *Factual and procedural background*

### 1.   *Pretrial proceedings*

#### a.   *DeWitt's bad faith claim premised on respondents' failure to accept Howard's settlement offers*

Prior to trial, DeWitt filed a brief in which he outlined various theories by which he claimed respondents had acted in bad faith in the Howard Action, including unreasonably breaching their duty to defend him and unreasonably delaying payment of the default judgment entered against him. In addition, citing *Comunale* and its progeny, DeWitt contended that respondents had acted in bad faith by failing to accept Howard's reasonable settlement offers that were within the limits of liability contained in Cappelletti's Policy.[10] In particular, DeWitt argued that respondents' failure to accept Howard's March 2007 policy limit demand "resulted in a default judgment in excess of $4.6 million being of record against DeWitt for more than . . . two . . . years," until respondents finally entered into a settlement with Howard in August 2009. Notwithstanding respondents' satisfaction of the default judgment

---

[10] We assume for purposes of this decision that DeWitt adequately alleged this theory of bad faith liability notwithstanding the lack of any allegations in his complaint pertaining to respondents' failure to accept reasonable settlement offers.

against DeWitt through the August 2009 settlement, DeWitt contended that he had suffered damages related to respondents' alleged bad faith, including attorney fees he incurred in his attempt to obtain policy benefits, damage to his credit, and emotional distress damages.

DeWitt also filed a trial readiness conference report in which he stated that he intended to request that the trial court instruct the jury pursuant to CACI No. 2334.

> b. *Pretrial discussions between the trial court and counsel concerning DeWitt's bad faith claim based on respondents' refusal to accept Howard's settlement offers*

Prior to trial, respondents filed a motion in limine to exclude evidence of the dollar amount of the August 2009 settlement in the Howard Action.[11] At a hearing on the motion, DeWitt's counsel argued that evidence as to the amount of the August 2009 settlement in the Howard Action was admissible to prove that respondents acted in bad faith in failing to accept Howard's prior reasonable settlement demands.

In response, the trial court stated, "I'm trying to figure out why [respondents] had a duty to settle the case, when they hadn't accepted the tender of the case." After DeWitt's counsel argued that the trial court had already determined that respondents had breached the duty to defend, the trial court questioned whether respondents owed DeWitt a duty to settle in the absence of a showing that respondents owed DeWitt a duty to indemnify. DeWitt's counsel argued that "the duty to defend, coupled with the failure to accept a reasonable settlement demand, is a well-established principle in California insurance law in third party claims, which is what we have exactly here, where there's been a refusal to defend. . . . That's the CACI 2334 instruction." The court responded, "*And do any of those cases hold that without a duty to indemnify, that's still bad faith?*" (Italics added.) DeWitt's counsel requested that the court defer its ruling until it could provide the court with authority on the issue. The trial court agreed to defer ruling on the motion in limine.

> 2. *Evidence presented at trial pertaining to respondents' refusal to accept Howard's settlement offers*

At trial, DeWitt presented evidence that in April 2007, after the entry of the approximately $4.7 million default judgment against DeWitt in December 2006, respondents refused to accept Howard's offer to settle the action against

---

[11] The motion in limine *is not in the record.*

DeWitt for the policy limits of $1 million. DeWitt also presented evidence that in August 2009 respondents paid $3.5 million to Howard in satisfaction of the default judgment that Howard had obtained against DeWitt.[12]

### 3. *Discussions between the court and DeWitt's counsel during trial concerning an insurer's duty to accept a reasonable settlement offer*

During the trial, outside the presence of the jury, the trial court indicated that it had reviewed several cases that DeWitt's counsel had provided to the court.[13] While discussing these cases with DeWitt's counsel, the court stated, "If the insurance company refuses a reasonable settlement offer, and if the potential insured later is tagged with a judgment or an excess judgment, the insurance company may, ultimately be on the hook. *But that would require proof that the third party, the potential insured, was covered.*" (Italics added.)

DeWitt's counsel responded, "That's not true, your honor. If an insurance company refuses to defend, what is the consequences [*sic*] of their refusal to defend? They are not allowed afterwards to now start arguing that they shouldn't be tagged with the excess judgment or there was no . . . duty to indemnify. . . . [¶] . . . [¶] If the insurance company fails to defend, what's the consequence of that? Well, a consequence of that is, effectively, they have waived their right to make the argument that there was no coverage. They have waived their right to say there's no duty to indemnify . . . ."

In the ensuing conversation, the court expressed skepticism concerning the contention that "a potential insured . . . can sue the insurance company and foreclose any discussion of coverage in the trial on bad faith."

### 4. *DeWitt's request that the trial court instruct the jury pursuant to CACI No. 2334*

During a conference outside the presence of the jury concerning jury instructions, DeWitt's counsel abandoned DeWitt's breach of contract claim, stating that he was not requesting that the jury be instructed concerning any breach of contract issues. DeWitt's counsel further stated, "The jury's not deciding the breach of the duty to indemnify."

---

[12] The trial court ruled that DeWitt could present evidence as to the amount respondents paid Howard to settle the Howard Action against DeWitt, in light of respondents' presentation of evidence that Howard had accepted Cappelletti and Hammond's offer to settle the claims against them for a total of $50,000.

[13] It appears from the record that the court was referring to the cases that DeWitt's counsel had provided to the court after the pretrial hearing, at which DeWitt's counsel had stated that he would provide the court with cases concerning an insurer's duty to accept a reasonable settlement offer.

DeWitt's counsel subsequently indicated that he was requesting that the trial court instruct the jury pursuant to CACI No. 2334. The court noted that the use note for CACI No. 2334 stated that the instruction was to be used only in a case in which the insurer had assumed the duty to defend. DeWitt's counsel acknowledged the content of the use note but contended, "We have a theory in this bad faith case that their refusal to accept a reasonable settlement demand within policy limits damaged us. And, clearly, this is a third party case. And I . . . do not believe this is contingent on them accepting the defense at some point in time." The trial court denied the request, stating, "[T]he use note just says, straight out, this is only if the insured [*sic*: insurer] subsumed [*sic*: assumed] the duty to defend. And on that basis, [I am] going to exclude it."

5. *The trial court's instructions concerning bad faith and the jury's verdict*

The trial court instructed the jury on several theories of bad faith liability, including a modified version of CACI No. 2336 concerning an insurer's unreasonable failure to defend. In addition, the trial court instructed the jury pursuant to a modified version of CACI No. 2337 concerning factors that the jury was to consider in evaluating respondents' conduct. That instruction provided in relevant part as follows: "In determining whether [respondents] acted unreasonably and without proper cause, you may consider whether the [respondents] did any of the following: 'A,' misrepresented or failed to advise [DeWitt] of relevant facts or of an insurance policy provision related to coverage; 'B,' failed to acknowledge and act reasonably promptly after receiving communications about the claim arising under the insurance policy; 'C,' failed to adopt and implement reasonable standards for the prompt investigation and processing of claims under its insurance policies; 'D,' unreasonably and without proper cause failed to conduct a full, fair and thorough investigation. [¶] . . . The [respondents] had a duty diligently to search for and consider evidence supporting a duty to defend; 'E,' unreasonably and without proper cause failed to provide Mr. DeWitt with a defense; 'F,' did not attempt, in good faith, to reach a prompt, fair, and equitable settlement of the claim after liability had become reasonably clear; 'G,' required [DeWitt] to file a lawsuit to recover amounts due under the policy."

The trial court provided the jury with a special verdict form that asked in relevant part, "Did the [respondents] unreasonably or without good cause fail to provide a defense to Donald DeWitt in the *Howard* case?" The jury responded to this question in the negative.

### 6. *DeWitt's motion for new trial*

After the trial court rendered judgment in favor of respondents in accordance with the jury's verdict, DeWitt filed a motion for new trial. Citing *Comunale* and its progeny, DeWitt contended that he had established all of the elements set forth in CACI No. 2334. Specifically, DeWitt argued that in view of respondents' breach of the duty to defend and their failure to accept Howard's reasonable settlement offers in the underlying litigation, the trial court erred in failing to instruct the jury pursuant to CACI No. 2334.

Respondents filed an opposition to the motion for new trial. In their opposition, respondents stated, "In this case, of course, DeWitt was a potential insured whom [respondents] did not defend." Respondents argued that the use note to CACI No. 2334 expressly stated that the instruction should be given only in cases in which the insurer has assumed the duty to defend, and noted that in this case, it was undisputed that respondents had not defended DeWitt.

At a hearing on the motion for new trial, DeWitt's counsel contended that a plaintiff who seeks to prevail on a claim of bad faith refusal to settle against an insurer is not required to demonstrate that the insurer assumed the insured's defense, arguing that the use note to CACI No. 2334 "has to be wrong." In the alternative, DeWitt's counsel argued that respondents had in fact assumed DeWitt's defense by filing a motion to set aside the default against DeWitt in the Howard Action.

At the conclusion of the hearing, the trial court denied the motion for new trial.

### C. *Application*

The case law discussed above establishes that an "insurer has a duty to accept a reasonable settlement offer only with respect to a *covered* claim." (*Marie Y., supra,* 110 Cal.App.4th at p. 958, citing *Hamilton, supra,* 27 Cal.4th at p. 724; e.g., *Johansen, supra,* 15 Cal.3d at p. 19 ["Clearly, if [the insurer's] belief that the policy did not provide coverage in the instant case had been vindicated, it would not be liable for damages flowing from its refusal to settle . . . ."]; accord, *Comunale, supra,* 50 Cal.2d at p. 660 ["[a]n insurer who denies coverage does so at its own risk," and may be liable for a bad faith refusal to settle "if the denial is found to be wrongful"]; *Samson, supra,* 30 Cal.3d at p. 237 [insurer must "bear the responsibility if coverage is found"].)

The Directions for Use for CACI No. 2334, the standard jury instruction that sets forth the elements of a bad faith claim based on a refusal to settle,

provide that the instruction is "intended for use if the insurer assumed the duty to defend the insured, but failed to accept a reasonable settlement offer." The use note is thus consistent with the law that applies in the case of a "*covered* claim" (*Marie Y., supra*, 110 Cal.App.4th at p. 958) since, ordinarily, an insurer who provides counsel for its insured and defends the action without a reservation of its rights *waives* its right to assert coverage defenses. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc., supra*, 136 Cal.App.4th at p. 223.)[14]

However, we agree with DeWitt that it is incorrect to state that an insurer may be "liable on this theory of bad faith *only* where it has formally assumed the duty to defend." (Italics added.) To the extent that the use note to CACI No. 2334 may be read to imply that proof of an insurer's assumption of the duty to defend is the *exclusive* manner by which an insured can prevail on a bad faith claim based on a refusal to settle, this implication is incorrect.[15] For example, *Comunale* makes clear that an insurer who "wrongfully refuses to defend" on the ground that a claim is not covered may be liable for failing to accept a reasonable settlement offer if the claim is in fact covered by a policy. (*Comunale, supra*, 50 Cal.2d at p. 660.)

DeWitt has cited no authority that would support the contention that a plaintiff may prevail on a bad faith claim against an insurer based on a failure to settle without also having established *either* that the insurer assumed the duty to defend the insured *or* that the insurer owed the insured a duty to indemnify. For the reasons discussed below, we conclude that DeWitt failed to present substantial evidence that respondents assumed the duty to defend him, and also failed to either demonstrate that the issue of indemnity had been determined in his favor in a prior proceeding, or request that the jury make such a determination in this action.

To begin with, there is no basis in the record for concluding that the trial court was required to instruct pursuant to CACI No. 2334 on the ground that DeWitt had established that respondents waived any coverage defenses by defending him in the Howard Action. In this regard, DeWitt asserts in his brief that respondents "effectively undertook [DeWitt's defense]" after receiving Howard's March 30, 2007 settlement letter by filing a motion to set aside the default judgment against him in the Howard Action. We disagree. Most fundamentally, as DeWitt acknowledged in his motion for summary adjudication on the issue of a breach of the duty to defend in this case, respondents

---

[14] However, *Johansen* makes clear that an insurer who assumes the duty to defend, *with* a reservation of rights, cannot be held liable for the failure to accept a reasonable settlement offer if the insurer's coverage position is ultimately vindicated. (See *Johansen, supra*, 15 Cal.3d at p. 19.)

[15] There is no other CACI instruction that outlines the elements of a bad faith claim based on the refusal to settle in a case in which an insurer has *breached* the duty to defend.

filed their motion to set aside "on behalf of [themselves] only." In addition, with their motion to set aside, respondents filed a proposed complaint in intervention that expressly reserved their rights to contested coverage. We reject DeWitt's suggestion that respondents somehow assumed the duty to defend DeWitt (and thereby waived their right to contest coverage) by filing a motion to set aside the default in the Howard Action on their own behalf and, at the same time, seeking to reserve their right to contest coverage.

DeWitt also did not establish in the trial court that coverage (i.e., respondents' duty to indemnify DeWitt) had been determined in DeWitt's favor in the Howard Action (or in any other proceeding). Indeed, DeWitt makes no claim on appeal in this regard.[16] Moreover, notwithstanding that the trial court stated to DeWitt's counsel on several occasions that coverage had *not* been established and that it was the court's belief that establishing coverage was a prerequisite to establishing bad faith liability based on a refusal to settle, DeWitt's counsel expressly withdrew his request for any jury instructions that would have permitted the jury in this case to determine whether respondents owed DeWitt a duty to indemnify. DeWitt's counsel specifically said to the court during the jury instruction conference, "The jury's not deciding the breach of the duty to indemnify."[17]

In sum, in this case, DeWitt failed to present substantial evidence that respondents had assumed a duty to defend (and had thereby waived their right to contest coverage), failed to establish that coverage had been determined in a prior action, and failed to request that the jury determine the issue of coverage in this action. Under these circumstances, we conclude that the trial court did not err in refusing DeWitt's request to instruct the jury on the elements of a bad faith claim based on the refusal to settle a third party's claim pursuant to CACI No. 2334.

---

[16] In his reply brief, DeWitt asserts without any citation to the record that "DeWitt was covered under the policy." If the assertion, "DeWitt was covered," means that respondents owed DeWitt a duty to *defend*, it is undisputed that the trial court concluded as much. However, there is nothing in the record to indicate that DeWitt established that respondents were required to *indemnify* him against Howard's claims.

[17] DeWitt's counsel took the position during trial that respondents had *waived* their right to contest coverage by breaching their duty to defend the Howard Action. That contention is contrary to the law (*Hogan, supra,* 3 Cal.3d at p. 564), and DeWitt does not raise this argument on appeal.

DeWitt also does not contend that respondents waived their right to contest coverage by entering into a settlement with Howard of her claims against DeWitt. DeWitt is correct not to raise such a contention. Even assuming Howard's claims against DeWitt were *not* covered by Cappelletti's Policy, respondents could have been found liable for the full amount of the default judgment as a component of damages flowing from their wrongful failure to defend DeWitt in the Howard Action. (See *Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 833 [61 Cal.Rptr.2d 909] ["where the insurer tortiously refuses to defend and as a consequence the insured suffers a default judgment, the insurer is liable on the judgment and cannot rely on hindsight that a subsequent lawsuit establishes noncoverage"].)

## IV.

## DISPOSITION

The judgment and the order denying the motion for new trial are affirmed. Respondents are entitled to recover costs on appeal.

Haller, Acting P. J., and McIntyre, J., concurred.